STATE OF NORTH CAROLINA v. ADAM FIELDS, JR.

No. 31

(Filed 13 October 1971)

1. Criminal Law § 154— case on appeal — reporting errors in the transcript — new trial

   The Supreme Court awards defendant a new trial for incredible errors in the transcript and admonishes an assistant solicitor for having accepted the record as a "correct statement of case on appeal" the same day the defendant served it on him.

2. Criminal Law § 158— conclusiveness of record on appeal

   The record certified to the Supreme Court imports verity, and the Court is bound by it.

3. Criminal Law § 154— case on appeal — reporting errors in transcript— duty of defense counsel

   Defense counsel and the solicitor, as officers of the court, have an equal duty to see that reporting errors in the transcript are corrected.

4. Criminal Law §§ 158, 159— form of transcript — reporting error — omission of comma

   Defendant contended that the following portion of the charge, which was taken verbatim from the transcript, constituted an expression of opinion by the trial judge that he believed the testimony of the deputy sheriff: "A photograph was introduced in this case for the purpose of illustrating and explaining the testimony of the witness, I believe the deputy sheriff." *Held:* The absence of a comma after the word "believe" was obviously a reporting error in the transcript, and defendant's contention is without merit.

State v. Fields

APPEAL by defendant from *Collier, J.,* November 1970 Session of ROBESON, transferred from the Court of Appeals for initial appellate review by the Supreme Court under its general order of 31 July 1970, entered pursuant to G.S. 7A-31(b)(4).

Defendant was tried upon a bill of indictment, in the form prescribed by G.S. 15-144, charging him with the murder of Curntis (Kernis) Lee Locklear on 28 March 1970. The solicitor, however, elected not to seek a verdict of murder in the first degree.

The evidence for the State tended to show: On the night of the homicide, defendant, deceased (Locklear), and others were at the home of a bootlegger, Robert Smith. Defendant accused Locklear of having made derogatory statements about him and pointed a pistol at Locklear, who apologized and retracted the statements. Defendant, however, said he was going to kill Locklear. Maybelle Locklear, deceased's sister, stepped between the two and then took Locklear outside, where one Brooks knocked him down five or six times with a board. As Locklear was getting up the last time defendant ran out of the house, pistol in hand, and shot him in the chest. Locklear said, "Junior, you have shot me," and defendant replied, "g. d. you, I will kill you." Witnesses at the scene immediately took Locklear to the hospital. He was dead on arrival. There were powder burns on his shirt.

Defendant's evidence tended to show: Locklear started an argument with defendant in the Smith house and drew a knife on defendant. When a third person produced a gun, Locklear went outside where he cut at Brooks and was "chasing him around." Defendant came outside and Locklear said to him, "You are the real s. o. b. I want." Knife in hand, Locklear grabbed defendant by the collar, and defendant shot him. Locklear fell with the knife in his hand. Thereafter, no one saw a knife, and defendant's witnesses "don't know what happened to the knife."

The jury returned a verdict of guilty of murder in the second degree, and the court imposed a sentence of eighteen to twenty-four years in the State's prison. Defendant immediately gave notice of appeal and, on the same day, posted an appearance bond in the sum of $18,000.00 with a professional bondsman as surety. Thereafter, defendant's trial counsel, court-appointed upon defendant's affidavit of indigency, moved the court to permit him to withdraw from the case. Braswell, J., allowed the motion and, taking note that a professional bondsman had posted an $18,000.00 appearance bond for defendant,

directed defendant to appear at the 4 January 1971 Session so that the court might determine the question of his indigency. At that time Canaday, J., appointed defendant's present counsel to perfect this appeal.

*Attorney General Robert Morgan, Assistant Attorney General Isham B. Hudson, Jr., for the State.*

*Floyd & Floyd for defendant appellant.*

SHARP, Justice.

[1] The evidence in this case was plenary to withstand defendant's motion for nonsuit and to sustain the verdict. However, the condition of the record, which the assistant solicitor "accepted as a correct statement of case on appeal" the same day it was served upon him, leaves us no alternative except to order a new trial.

Defendant assigned as error the following portions of his Honor's charge, the error and prejudice of which are apparent:

"If you find from the evidence beyond a reasonable doubt that on the 28th of March, 1970, Adam Fields, Jr. intentionally shot and killed Kernis Lee Locklear, was natural and probable result of Adam Fields, Jr.'s act, but that Adam Fields, Jr. has satisfied you he was an aggressor after retreating as far as he could, killed Kernis Lee Locklear under such circumstances as reasonably arise in your minds was necessary in order to save himself from death or great bodily harm; that circumstances did create such belief in defendant's mind, and he did not use excessive force, it would be your duty to return a verdict of not guilty; if you are not satisfied that he hadn't retreated as far as he safely could have.

". . . .

"Furthermore, if you find Adam Fields, Jr. has failed to satisfy you he was the aggressor, but has satisfied you he had no murderous intent when he entered the fight, you would find him guilty of voluntary manslaughter."

[2] We are entirely convinced that Judge Collier did not utter the foregoing gibberish. However, it is axiomatic that the record which is certified to us imports verity, and we are bound by it. *Rogers v. Rogers,* 265 N.C. 386, 144 S.E. 2d 48; 1 N. C. Index

2d, *Appeal and Error* § 42 (1967). Whether the initial responsibility for its presence in the case on appeal belongs to the court reporter we do not know. However, the final responsibility for this case on appeal rests with the solicitor, whose assistant accepted service and agreed to it "as a correct statement."

We are constrained to repeat the admonition to solicitors which we so recently gave in *State v. Fox,* 277 N.C. 1, 28-29, 175 S.E. 2d 561, 578 (1970) :

"Although the primary duty of preparing and docketing a true and adequate transcript of the record and case on appeal in a criminal case rests upon defense counsel, G.S. 1-282, G.S. 15-180, it is the duty of the solicitor to scrutinize the copy which appellant serves upon him. If it contains omissions, errors, or misleading juxtapositions it is the solicitor's responsibility to file exceptions or a counter case within his allotted time. He tried the case before the jury, and he is the State's only representative who is in position to evaluate the appellant's statement of the case on appeal. The Attorney General, who must defend the case in the Appellate Division, is dependent upon the solicitor for a valid record of the trial below. When the solicitor accepts the defendant's case on appeal and it is certified to the Appellate Division, it imports verity and the appellate court is bound by the record as certified. . . . It costs the State and profits a solicitor nothing if, after spending ten days in a trial such as this, we order a new trial for an error appearing in the transcript when none actually occurred. . . . [W]e remind the solicitors that their obligation to a case does not end when the judge pronounces sentence. Their duty includes policing the case on appeal. This, of course, necessitates the expenditure of the time and effort required to make a careful and painstaking examination of it and to file exceptions or counter case if either is necessary to provide a correct record and a case on appeal which truly and intelligently sets out the proceedings as they occurred. Only upon such a record can the Attorney General and the Appellate Division do justice to the State and to the defendant."

[3, 4]  We also remind defense counsel that, as officers of the court, they have an equal duty to see that reporting errors are corrected. Their duty to a client does not embrace the right to perpetuate and take advantage of such mistakes. For example, defendant assigns as error the bracketed portion of the follow-

ing excerpt from the charge as it appears in the transcript, and argues that it constituted an expression of opinion:

"A photograph was introduced in this case for the purpose of illustrating and explaining the testimony of the witness, [I believe the deputy sheriff.]"

Obviously a comma has been omitted after the word *believe*. The clear import of the quoted paragraph is that the judge thought it was the testimony of the deputy sheriff which the photograph purported to illustrate. Certainly the judge was not telling the jury that he believed the deputy sheriff's testimony. This assignment of error is without merit.

The volume of criminal appeals today threatens the judicial machinery. Every meritless appeal and every retrial adds its weight to the overload. Furthermore, since the vast majority of criminal appellants are indigent, the State pays the entire cost of most such appeals. Thus, it is the taxpayer who is penalized when solicitors and defense counsel do not perform their duties with reference to appeals.

For the error appearing in the transcript there must be a

New trial.