STATE OF NORTH CAROLINA v. DARRELL LEE HEDRICK

No. 108

(Filed 29 January 1976)

1. Burglary and Unlawful Breakings § 4— first degree burglary — pillow-case — admissibility

Trial court in a first degree burglary case properly allowed into evidence two portions of a pillowcase where there was evidence from which the jury could infer that defendant had removed the pillowcase from a bed in the house and intended to use it as a mask to hide his identity from the occupants of the house or as a means of subduing the occupants who he knew lived there.

2. Burglary and Unlawful Breakings § 5— first degree burglary — intent to commit larceny — sufficiency of evidence

Evidence in a first degree burglary case was sufficient to show an intent to commit larceny, though defendant did not disturb any of the valuables in the house which he entered, where such evidence tended to show that defendant entered an occupied dwelling in the nighttime, he climbed a ladder to reach a second-floor balcony, pushed a windowpane out of a balcony door, removed the key from the inside lock, and unlocked the door, television and telephone wires were cut and all the phones in the house were dead except one, the wire to it not having been completely cut through, defendant had done work for the owner of the house and was familiar with its layout, there were valuables in the house, including antiques, silver, jewelry, and money, and when confronted, defendant immediately turned and fled.

3. Criminal Law § 169— testimony excluded — failure to show what testi-mony would have been

Since neither the record nor defendant's brief disclosed what wit-nesses would have said had they been allowed to answer questions concerning defendant's mental capacity, defendant's assignments of error to the exclusion of the evidence do not comply with Rule 19 of the Rules of Practice in the Supreme Court and will not be considered.

4. Criminal Law §§ 102, 138— first degree burglary — punishment — no jury argument

The trial court in a first degree burglary case properly denied the motion of defendant's attorneys to argue the question of punish-ment to the jury.

APPEAL by defendant from Lee, J., at the 5 May 1975 Regular Criminal Session of WAKE Superior Court.

Defendant was tried and convicted of first degree burglary and sentenced to life imprisonment.

The State's evidence tended to show that Medora Johnson, a companion to Mrs. William B. Drake, was residing in Mrs.

Drake's home at 2025 Fairview Road in Raleigh, North Carolina. Between 10:15 and 10:30 p.m. on 24 March 1975, Mrs. Johnson was watching television in her upstairs bedroom when she heard a "kind of thud" at the back of the house and a little later saw the cable into her television set being pulled taut through the windowsill. Mrs. Johnson called the police. Shortly thereafter she heard a screen door rattling in one of the upstairs bedrooms and heard glass falling. She went downstairs and out the front door where she flagged the two police cars responding to her call.

Officer Notch went upstairs with Mrs. Johnson while Officer Daniels went around the side of the house. As Officer Notch and Mrs. Johnson reached the top of the stairs, defendant emerged from Mrs. Johnson's bedroom. When Mrs. Johnson asked him what he was doing there, he turned and ran through another bedroom and jumped over the deck railing onto the terrace approximately twenty feet below where he was apprehended by Officer Daniels.

Defendant had recently done some roof work on the house and was familiar with the house and its occupants.

The State's evidence also tended to show that both Mrs. Johnson and Mrs. Drake kept valuables such as money, jewelry and antiques in the house but that no valuables were taken or disturbed.

The testimony of defendant's brother, friends and wife tended to show that during childhood defendant acted strangely on many occasions without knowing the reason for his behavior, but that at the present time he was active in a local church and had a good reputation except for a drinking problem. He appeared unable to stop drinking once he started and frequently underwent personality changes after periods of excessive drinking.

Defendant testified about his drinking problems. He further testified that on 24 March 1975 he left his apartment after a fight with his wife over his drinking, cashed a twenty-dollar check and went to a nearby bar where he remained from approximately 6:00 p.m. to sometime after 9:00 p.m. During that time he consumed about eighteen twelve-ounce cans of beer and ate one sandwich. He has no memory of anything from the time he walked out of the bar until he became aware that he was standing in the hallway of Mrs. Drake's house.

Other facts necessary to decision are included in the opinion.

*Attorney General Rufus L. Edmisten, Special Deputy Attorney General Sidney S. Eagles, Jr., and Associate Attorney Claudette Hardaway for the State.*

*Robert A. Hassell and Theodore E. Corvette, Jr., for defendant appellant.*

MOORE, Justice.

At the outset it is noted that the record on appeal does not show a single objection or exception taken during the trial. Defendant's attorneys in their brief do refer to objections taken during the trial and refer to page numbers in the trial transcript which, of course, is not before us. In *Gasque v. State,* 271 N.C. 323, 339, 156 S.E. 2d 740, 751 (1967), *cert. den.* 390 U.S. 1030, 20 L.Ed. 2d 288, 88 S.Ct. 1423 (1968), we said:

> ". . . The record does not show any objection to this testimony, but only an exception. This is said in 1 Strong, N. C. Index 2d, Appeal and Error, § 1: 'The jurisdiction of the Supreme Court on appeal is limited to questions of law or legal inference, which, ordinarily, must be presented by objections duly entered and exceptions duly taken to the rulings of the lower court.' This is said in *Conrad v. Conrad, supra* [252 N.C. 412, 113 S.E. 2d 912 (1960)] : 'Error can only be asserted by an exception taken at an appropriate time and in an appropriate manner. Errors based on rulings made during the trial must ordinarily be called to the attention of the court by an objection taken when the ruling is made. G.S. 1-206.' "

*See* Rules 9 and 10, New North Carolina Rules of Appellate Procedure.

The charge is not included in the record on appeal. It is therefore presumed that the jury was properly instructed as to the law arising upon the evidence as required by G.S. 1-180. *State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845 (1971) ; *State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225 (1967) ; *State v. Harrison,* 239 N.C. 659, 80 S.E. 2d 481 (1954).

Matters discussed in the brief outside the record ordinarily will not be considered since the record certified to the Court

imports verity and we are bound by it. *State v. Fields,* 279 N.C. 460, 183 S.E. 2d 666 (1971) ; 1 Strong, N. C. Index 2d, Appeal and Error § 42. However, due to the gravity of the offense and the imposition of life imprisonment, we have elected to review defendant's assignments of error as set out in his brief as if properly presented.

[1]  Defendant first assigns as error the admission into evidence of State's Exhibit 13A (a piece of pillowcase) and State's Exhibit 13B (a larger portion of a pillowcase) on the grounds that these exhibits were not tied to the defendant or shown to be relevant to the crime. The well established rule in a criminal case is that every object that is calculated to throw light on the supposed crime is relevant and admissible. *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975) ; *State v. Arnold,* 284 N.C. 41, 199 S.E. 2d 423 (1973) ; *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. den.* 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936 (1966) ; 1 Stansbury, N. C. Evidence § 118, p. 356 (Brandis Rev. 1973).

In the present case, Mrs. Johnson testified that she had checked the northwest bedroom earlier in the evening of 24 March, that the pillow was on the bed and the bed was made. Officer Daniels identified Exhibit 13A as the piece of material found in the northwest bedroom beside the pillow which was on the floor near the bed. He identified Exhibit 13B as the pillowcase that was found cut up and balled up under the chair in the southwest bedroom, Mrs. Johnson's room. From this evidence the jury could infer that the defendant had taken off the pillowcase in the northwest bedroom for use as a mask to hide his identity from the occupants of the house or as a means of subduing the occupants who he knew lived there. We hold that these two State's exhibits were relevant and admissible in evidence. This assignment is overruled.

[2]  Defendant next contends that the trial court erred in denying his motion to dismiss the indictment on the grounds that the evidence taken in the light most favorable to the State was insufficient to show an intent to commit larceny. This contention is without merit. Intent is a mental attitude which can seldom be proved by direct evidence, but must ordinarily be proved by circumstances from which it can be inferred. *State v. Little,* 278 N.C. 484, 180 S.E. 2d 17 (1971) ; *State v. Arnold,* 264 N.C. 348, 141 S.E. 2d 473 (1965) ; 2 Strong, N. C. Index 2d, Criminal Law § 2, p. 481.

The State's evidence showed that defendant entered an occupied dwelling in the nighttime. He climbed a ladder to reach a second-floor balcony, pushed a windowpane out of a balcony door, removed the key from the inside lock and unlocked the door. Television and telephone wires were cut and all the phones in the house were dead except Mrs. Johnson's, the wire to her phone not having been completely cut through. Defendant had done work for Mrs. Drake and was familiar with the layout of the house. Mrs. Johnson testified that there were valuables in the house, including antiques, silver, jewelry and money. When confronted, defendant immediately turned and fled.

The fact that defendant did not disturb any of the valuables in the house does not aid him. As stated in *State v. Accor* and *State v. Moore,* 277 N.C. 65, 175 S.E. 2d 583 (1970):

> " '. . . Numerous cases, however, hold that an unexplained breaking and entering into a dwelling house in the nighttime is in itself sufficient to sustain a verdict that the breaking and entering was done with the intent to commit larceny rather than some other felony. The fundamental theory, in the absence of evidence of other intent or explanation for breaking and entering, is that the usual object or purpose of burglarizing a dwelling house at night is theft.' "

In *State v. McBryde,* 97 N.C. 393, 1 S.E. 925 (1887), the evidence failed to show that the intruder had disturbed any of the personal property within the residence. The evidence was held sufficient to withstand the defendant's motion to dismiss as of nonsuit. Justice Davis, speaking for the Court, said:

> ". . . The intelligent mind will take cognizance of the fact, that people do not usually enter the dwellings of others in the night time, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also. The fact of the entry alone, in the night time, accompanied by flight when discovered, is some evidence of guilt, and in the absence of any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent. . . ."

*Accord, State v. Oakley,* 210 N.C. 206, 186 S.E. 244 (1936).

We hold that the intent to commit the felony of larceny can be inferred by the jury from the facts and circumstances of this case. The motion to dismiss the indictment was properly denied.

[3] Defendant presents several assignments of error concerning the exclusion of lay witness testimony on defendant's emotional problems, childhood history and state of mind. Defendant contends that the exclusion of this evidence prejudiced his defense of temporary insanity. A review of the record discloses that many aspects of defendant's past and present problems were explored and allowed into evidence. Defendant's brother testified that he and defendant grew up in an atmosphere of extremely strict and sometimes cruel discipline and violent outbursts by their father. He did not believe the defendant was stable and recounted various incidents of erratic and destructive behavior by defendant that defendant said he could not control. He also described defendant's prior heavy use of marijuana and various kinds of pills.

Defendant's wife testified concerning their marital problems caused mainly by defendant's heavy drinking habits. She also testified that he underwent changes in personality under the influence of alcohol, often behaving destructively.

Generally, lay witness testimony concerning a person's mental capacity and condition is admissible as long as the witness has had a reasonable opportunity to observe the person and form an opinion satisfactory to himself on this issue. *Moore v. Insurance Co.*, 266 N.C. 440, 146 S.E. 2d 492 (1966); *State v. Witherspoon*, 210 N.C. 647, 188 S.E. 111 (1936); 1 Stansbury, N. C. Evidence § 127, pp. 402-07 (Brandis Rev. 1973). In the present case a substantial amount of this type of testimony was admitted. Defendant, however, alleges that similar testimony was improperly excluded. Neither the record nor the brief discloses what the witnesses would have said if allowed to answer these questions concerning defendant's mental capacity. An exception to the exclusion of evidence will not be sustained when it is not made to appear what the excluded evidence would have been. *Heating Co. v. Construction Co.*, 268 N.C. 23, 149 S.E. 2d 625 (1966). The defendant's assignments of error relating to the exclusion of evidence therefore do not comply with Rule 19 of the Rules of Practice in the Supreme Court and will not be considered. *Williams v. Boulerice*, 269 N.C. 499, 153 S.E. 2d 95 (1967); *Heating Co. v. Construction Co., supra;* 1 Strong,

N. C. Index 2d, Appeal and Error § 30, pp. 164-65. *See also* Rules 9 and 10 of the New North Carolina Rules of Appellate Procedure. However, in our view of this case these assignments, had they been properly presented, are immaterial. Ample evidence of defendant's mental condition and intoxication was admitted and it is presumed that the court correctly instructed the jury concerning this evidence. *State v. Murphy, supra; State v. Staten, supra; State v. Harrison, supra.* These assignments are overruled.

[4]   Defendant's counsel in their brief contend that the trial court erred in refusing them an opportunity to argue to the jury the question of punishment for burglary, in view of the fact that the district attorney had informed the jurors during jury selection that burglary was no longer punishable by death. The record before us does not disclose what statements, if any, were made by the district attorney, what motions were made by defendant's attorneys or what rulings were entered by the trial court.

Defendant concedes that the general rule has been aptly stated by Justice Sharp (now Chief Justice) in *State v. Rhodes,* 275 N.C. 584, 169 S.E. 2d 846 (1969) :

> "The amount of punishment which a verdict of guilty will empower the judge to impose is totally irrelevant to the issue of a defendant's guilt. It is, therefore, no concern of the jurors. [Citations omitted.]
>
> *  *  *
>
> ". . . In the absence of some compelling reason which makes disclosure as to punishment necessary in order 'to keep the trial on an even keel' and to insure complete fairness to all parties, the trial judge should not inform the jurors as to punishment in *noncapital* cases. If information is requested, he should refuse it and explain to them that punishment is totally irrelevant to the issue of guilt or innocence. . . ." (Emphasis added.)

*Accord, State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974) ; *State v. Watkins,* 283 N.C. 504, 196 S.E. 2d 750 (1973) ; *State v. Davis,* 238 N.C. 252, 77 S.E. 2d 630 (1953). For capital cases, *see* G.S. 15-176.3 through G.S. 15-176.5; *State v. Bell,* 287 N.C. 248, 214 S.E. 2d 53 (1975).

As stated by Justice Lake in *State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6 (1974) : "The punishment to be imposed not

being a matter to be determined by the jury, defendant's counsel was not entitled to argue this question to the jury."

Defendant, however, contends that this case falls within the exceptions to the general rule for noncapital cases because of (1) the danger of jury confusion as to what the actual punishment now is for first degree burglary and (2) the unfairness of allowing the district attorney to state to the jury what the punishment is not while not allowing the defendant to argue the question of punishment. Despite these conclusory assertions made in defendant's brief, the record discloses no evidence of jury confusion nor any evidence of unfairness to defendant. Under these circumstances, no error appears. The motion of defendant's attorneys to argue the question of punishment to the jury was properly denied.

After careful consideration of each of defendant's assignments of error, in his trial we find no error.

No error.