STATE OF NORTH CAROLINA v. WILLIAM DEEMS BAGGETT

No. 17

(Filed 11 October 1977)

**Homicide § 21.5— premeditation and deliberation—sufficiency of evidence**
  The State's evidence was sufficient for the jury to find that defendant, with malice, intentionally shot and killed the victim after premeditation and deliberation, and thus was guilty of first degree murder, where it tended to show that defendant left his home after a dispute with his wife with a loaded shotgun and a loaded pistol; before leaving he consumed a substantial amount of whiskey; after picking up four companions defendant stopped beside the road and shot the pistol at a highway sign; defendant indicated to his companions that he had a loaded shotgun in the car and gave each of them a shotgun shell to use if needed; upon arriving at a dance hall and poolroom, defendant purchased a beer and went into the poolroom; deceased approached defendant three times, insisting that he knew defendant, and was pushed away by defendant on all three occasions; on the last occasion, defendant struck deceased in the mouth and asked if he wanted to do anything about it, and deceased answered "no"; defendant, without any justification or excuse, then pulled a pistol from his rear pocket and shot the deceased at least three times; some of the shots struck deceased's body as he fell to the floor; and, as defendant walked away, he turned, looked at the victim's body and smiled.

  Justice Exum dissenting.

  Justice Lake joins in the dissenting opinion.

DEFENDANT appeals from judgment of *Barbee, S.J.*, January 1977 Session, SAMPSON Superior Court.

Upon an indictment, proper in form, defendant was found guilty of first-degree murder and sentenced to imprisonment for life. The court submitted the lesser offenses of second-degree murder and voluntary manslaughter to the jury.

The evidence for the State tended to show the following:

That on or about the evening of October 24, 1976, said to be a Saturday night, the defendant left his home in his 1973 Plymouth automobile and drove to the home of Edgar Williams and invited Ralph Junior Carter, John Walter Carter, Jr., Roy Lee Hayes and George Williams to ride with him to Salemburg. The defendant told them that he had already consumed a pint of liquor and indicated he was mad with his wife. He said that before leaving home he started to go through the whole house and "kill everything there."

On the way to Salemburg, the defendant stopped his car, got out, pulled a silver-colored .22 caliber pistol from his pocket and started shooting at a road sign. Apparently some people started shooting back and the defendant returned to his car, reloaded the pistol, and drove off. He told the others that he had a shotgun in the back seat of the car. He gave each of his companions a shotgun shell and told them the shotgun could be used if needed.

On the edge of Salemburg they stopped at a combination poolroom and dance hall called "Sam's Place." The defendant bought a beer and entered the poolroom. When he entered, James Dee Williams, who apparently had been drinking, approached the defendant and said, "don't I know you?" The defendant responded, "No" and pushed the man away. Williams approached the defendant two more times and was pushed away. The fourth time Williams approached, the defendant struck him in the mouth. Williams grabbed his mouth and the defendant rubbed his hands and asked Williams if he wanted to do anything about it. Williams said "No." The defendant then took the silver-colored .22 caliber pistol from his rear pocket and fired at Williams four times, apparently striking him at least three times. Some of the bullets from the defendant's pistol struck Williams while he was falling to the floor. After Williams fell, the defendant looked at him, *smiled*, and ran from the poolroom. When outside the defendant went to his car, pulled out the shotgun, fired once into the air, and drove off.

The evidence disclosed that the deceased was unarmed, did not curse or touch defendant, and offered no resistance. He died from internal hemorrhaging as a result of the gunshot wounds.

Officers from the sheriff's department arrived on the scene soon thereafter. They observed three bullet holes in the body of the deceased. An autopsy was later performed in which the blood from the victim's body was found to contain .31 percent by weight of alcohol.

The defendant was later arrested at his home asleep in bed. The silver-colored .22 caliber pistol was found under the mattress, fully loaded. Elsewhere in the room, a loaded shotgun was found. The defendant appeared to be in a stupor when awakened, but the arresting officer did not notice the odor of alcohol on his breath, and was of the opinion that he was not drunk.

The defendant offered no evidence.

Other facts necessary to the decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Claude W. Harris for the State.*

*David J. Turlington, Jr. for the defendant.*

COPELAND, Justice.

The questions for our consideration relate to defendant's two assignments of error, maintaining (1) there was insufficient evidence to support a verdict of first-degree murder and further contending (2) that the trial judge should have set aside the verdict of guilty. We find no merit in either of these assignments of error.

In order for the trial court to submit a charge of first-degree murder to the jury, there must be evidence tending to show that the defendant, with malice, after premeditation and deliberation, intentionally shot and killed the victim. Our court defines premeditation as "thought beforehand for some length of time, however short. *State v. Benson*, 183 N.C. 795." *State v. Reams*, 277 N.C. 391, 401, 178 S.E. 2d 65, 71 (1970); *State v. Biggs*, 292 N.C. 328, 233 S.E. 2d 512 (1977); *see State v. McCall*, 286 N.C. 472, 212 S.E. 2d 132 (1975); *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974); *State v. Van Landingham*, 283 N.C. 589, 197 S.E. 2d 539 (1973).

> " 'Deliberation means that the act is done in cool state of blood. It does not mean brooding over it or reflecting upon it for a week, a day or an hour, or any other appreciable length of time, but it means an intention to kill, executed by the defendant in a cool state of blood in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose, and not under the influence of a violent passion, suddenly aroused by some lawful or just cause or legal provocation.' " *State v. Faust* 254 N.C. 101, 106-07, 118 S.E. 2d 769, 772 (1961); *see State v. Biggs, supra; State v. Britt, supra; State v. Reams, supra.*

" 'No fixed length of time is required for the mental processes of premeditation and deliberation constituting an element of the offense of murder in the first degree, and it is sufficient if these processes occur prior to, and not simultaneously with, the killing.' " *State v. Perry*, 276 N.C. 339, 347, 172 S.E. 2d 541, 547 (1970).

In *Perry*, the defendant was riding in the righthand passenger seat of an automobile on Wilmington and Peace Streets in the City of Raleigh. He and his two companions had been riding around Raleigh all day drinking. Defendant's vehicle was in the left lane and the victim's vehicle was in the right lane. Apparently they rode side by side for some distance. The victim was black and the defendant was white. There were words between them. After these words defendant pulled out his pistol and shot three times. One of the bullets struck the victim in the mouth, and he died as a result. One of the companions said to the defendant "you have killed that man." The defendant replied "if you will back up I will finish it." While in jail awaiting trial, defendant told a fellow prisoner "that black son-of-a-bitch told me to behave myself and go home and I shot him." Our Court held this evidence to be sufficient to establish premeditation and deliberation.

We have held that premeditation and deliberation are not usually susceptible of direct proof but may be shown by the circumstances. *State v. Van Landingham, supra; State v. Perry, supra.*

"Among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are: want of provocation on the part of the deceased; the conduct of the defendant before and after the killing; the use of grossly excessive force, or the dealing of lethal blows after the deceased has been felled." *State v. Van Landingham, supra* at 599, 197 S.E. 2d at 545.

The State's evidence is sufficient to support the following findings: (1) The defendant left his home after a dispute with his wife with a loaded shotgun and a loaded pistol; (2) Before leaving he consumed a substantial amount of whiskey; (3) After picking up his companions and proceeding towards Salemburg, he stopped beside the road and shot the pistol at a highway sign; (4) He indicated to his companions that he had a loaded shotgun in the car and gave each of them a shotgun shell to use if needed; (5) Upon arriving at "Sam's Place," defendant purchased a beer and went into the poolroom; (6) The deceased approached the defendant and was pushed away on

three occasions, and on the last occasion the defendant struck him in the mouth; (7) Defendant asked if he wanted to do anything about it and the deceased answered "No"; (8) At this point the defendant without any cause or justification reached into his rear pocket, pulled out the silver-colored pistol and shot the deceased at least three times; (9) Some of the shots struck the deceased's body as he fell to the floor; (10) As the defendant walked away, he turned, looked at the body of his victim and *smiled*.

Clearly the circumstantial standards which Chief Justice Sharp listed in *State v. Landingham, supra*, are met in this case. There was a want of provocation on the part of the deceased; the conduct of the defendant before and after the killing indicated a total disregard for human life; the defendant used grossly excessive force; and lethal blows were struck by bullets that entered the victim's body as he fell to the floor. Here there was clearly sufficient time after defendant struck the victim in the mouth for him to form a fixed intent to kill. There was time for him to ask the victim if he wanted to do something about it and for deceased to answer "No." There was time after that for defendant to reach into his rear pocket, pull out the pistol and fire it at least four times.

It is elementary that upon a motion for judgment of nonsuit all the evidence must be considered in the light most favorable to the State. In the instant case, the evidence introduced by the State, when so considered, is sufficient to raise a legitimate inference and to permit the jury to find that the defendant, after premeditation and deliberation, formed a fixed purpose to kill and thereafter accomplished this purpose. *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d 80 (1975); *State v. McCall, supra, State v. Britt, supra, State v. Van Landingham, supra; see State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977), decided this date. It would appear that when the defendant left his home he did so with the intention to do violence to or murder someone before he returned. He departed looking for trouble and as is usually the case, he found it. This assignment of error is without merit and overruled.

The defendant's motion to set aside the verdict on the ground that it was contrary to the weight of the evidence is addressed to the sound discretion of the trial judge, whose ruling is not reviewable on appeal in the absence of manifest abuse of discretion. *State v. Witherspoon, supra*. No abuse of discretion is shown; therefore, this assignment is overruled.

We thus conclude that the evidence supports a finding that the defendant with malice, premeditation and deliberation, shot and killed James Dee Williams. Because of the serious nature of the case, we have searched the record for other errors and have found none. In the verdict and judgment, we find

No error.

EXUM, Justice, dissenting.

I respectfully dissent from the majority's view that the evidence in this case supports a verdict of guilty of murder in the first degree.

The evidence shows that both defendant and the deceased had been drinking heavily immediately prior to the shooting and were at a tavern of some sort apparently continuing to consume alcoholic beverages. With neither protagonist in full possession of his mental or physical faculties, the deceased began to annoy the defendant by approaching him several times in succession insisting that he knew the defendant. After pushing the deceased away three times defendant, upon the deceased's fourth approach, hit him in the mouth. Words passed between them, and defendant shot the deceased four times with a .22 caliber pistol he had in his pocket and smiled upon observing his handiwork.

While the evidence is clearly sufficient to convict the defendant of an intentional killing with malice, *i.e.*, murder in the second degree, I find it wanting on the element of deliberation. Deliberation means that defendant formed the intent to kill after "reflection, a weighing of the consequences of the act in more or less calmness" or "from a fixed determination previously formed after weighing the matter." *State v. Exum*, 138 N.C. 599, 617-18, 50 S.E. 283, 289 (1905). Deliberation has also been defined as forming the intent to kill "in a cool state of blood, in furtherance of a fixed design." *State v. Faust*, 254 N.C. 101, 106, 118 S.E. 2d 769, 772 (1961). All the evidence shows here, without contradiction, that defendant did not kill in a cool state of blood in furtherance of any fixed design or after any reflection or weighing of the consequences of his act in calmness. The shooting itself was a sudden event and brought on by the actual provocation of the deceased himself.

The deceased's acts do not constitute that "legal provocation" which would reduce murder in the second degree to manslaughter. They do, in this case, constitute that kind of actual provocation

which negates the element of deliberation. Before 1893 there were no degrees of murder in North Carolina. In that year murder was divided into two degrees: first degree murder, punishable by death, consisted only of murder committed in the perpetration of another felony and murder which was premeditated and deliberated. All other murder was murder in the second degree. N.C. Public Laws 1893, Chapter 85; *State v. Benton,* 276 N.C. 641, 657, 174 S.E. 2d 793, 803, 804 (1970). Speaking of the elements of premeditation and, particularly, deliberation, this Court said in an early case construing the new statute, *State v. Thomas,* 118 N.C. 1113, 1122, 1124, 24 S.E. 431, 434, 435 (1896):

> "The innate sense of justice implanted in the breast of every good man demanded that a distinction should be drawn between cases where there was actual though not legal provocation and those where a fixed purpose was shown . . . .
>
>      . . . .
>
> "If . . . there was a quarrel or argument, and in the heat of sudden passion, engendered by disagreeable language, which would not have been provocation sufficient to bring the offense within the definition of manslaughter, the crime . . . was murder in the second degree."

In the very first case construing the new murder statute, *State v. Fuller,* 114 N.C. 885, 902, 19 S.E. 797, 802 (1894), this Court said:

> "The theory upon which this change has been made is that the law will always be executed more faithfully when it is in accord with an enlightened idea of justice. Public sentiment has revolted at the thought of placing on a level in the courts *one who is provoked by insulting words* (not deemed by the common law as any provocation whatever) to kill another with a deadly weapon, with him who waylays and shoots another in order to rob him of his money, or poisons him to gratify an old grudge." (Emphasis supplied.)

The majority relies heavily on *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970). In *Perry,* however, there is absolutely no evidence of any provocative behavior on the part of the deceased prior to the shooting. He was riding in his own vehicle, minding his own business, when the vehicle in which the defendant was riding pulled up alongside and the defendant shot the deceased. Only the defendant, himself, was the provocateur. The only words spoken by the deceased, according to the evidence, were those admonishing the defendant to "behave" himself.

State v. Baggett

Neither do I believe that those circumstances delineated in *State v. Van Landingham*, 283 N.C. 589, 599, 197 S.E. 2d 539, 546 (1973), which may be considered on the question of deliberation, avail the state in this case. Here there was, all the evidence shows, actual provocation on the part of the deceased. Defendant's conduct after the killing is consistent with his having killed with malice after being provoked. Apparently the four shots were fired in rapid succession, one of them missing the deceased, and three striking him while he was falling. There is no evidence of the dealing of lethal blows after the deceased was felled.

The killing in this case, in essence, is the unfortunate but not altogether uncommon result of what, except for the killing, would have been a minor imbroglio between two strangers thrown together by happenstance. To me these kinds of killings generally support prosecutions for second degree murder and no more. *See, for example, State v. Richardson*, 280 N.C. 178, 184 S.E. 2d 841 (1971); *State v. Fields*, 279 N.C. 460, 183 S.E. 2d 666 (1971); *State v. White*, 271 N.C. 391, 156 S.E. 2d 721 (1967); *State v. McLawhorn*, 270 N.C. 622, 155 S.E. 2d 198 (1967); *State v. Moore*, 236 N.C. 617, 73 S.E. 2d 467 (1952). In *State v. Rhyne*, 124 N.C. 847, 33 S.E. 128 (1899) the evidence tended to show that the defendant had been engaged in an argument with one of the deceased's employees at the deceased's cotton gin. Upon hearing of the argument, the deceased, owner of the gin, went to the defendant and inquired about the argument. The deceased said, "[A]re you the man that has been fussing here with Frank Parish?" When defendant made no answer the deceased asked him a second time. The deceased then put his left hand on the defendant's right shoulder or arm and asked defendant to come into the light so that he, the deceased, could find out what the fuss was all about. Suddenly the defendant stabbed the deceased saying, "[H]ands off." The deceased jumped back three or four feet. This Court held that the evidence was insufficient to show premeditation and deliberation and reversed a jury verdict of guilty of murder in the first degree. To the same effect *see State v. Bishop*, 131 N.C. 733, 42 S.E. 836 (1902).

I vote to vacate the verdict of guilty of murder in the first degree and the judgment based thereon and to remand for entry of a verdict of guilty of murder in the second degree and the pronouncement of a new judgment on that verdict. *See State v. Perry*, 291 N.C. 586, 231 S.E. 2d 262 (1977).

Justice LAKE authorizes me to say that he joins in this dissent.