STATE OF NORTH CAROLINA v. MICHAEL LEE HEAVENER

No. 8

(Filed 6 November 1979)

1. **Criminal Law § 76.5— waiver of right to counsel—necessity for specific finding**
     Though it would have been better if the trial court had made an express finding as to whether defendant knowingly and intelligently waived his right to counsel before answering questions by police, defendant nevertheless was not prejudiced since he testified on voir dire that he understood his rights at the time he waived them, and he therefore did not raise the issue as to whether he waived his right to counsel.

**2. Homicide § 21.5— first degree murder — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for first degree murder where such evidence tended to show that defendant was angry with deceased for breaking into his apartment and taking his TV and stereo; he admitted firing a shot which was not accidental; he told witnesses that he thought he had killed deceased; he stated that he covered deceased's body with grass or bushes and police located the body following defendant's instructions; and statements made by defendant were conflicting and contrary to what the evidence tended to show.

Justice BROCK took no part in the consideration or decision of this case.

APPEAL by defendant from *Kirby, J.*, 14 November 1978 Regular Criminal Session, GASTON Superior Court.

Upon a plea of not guilty defendant was tried on a bill of indictment charging him with the murder of Timothy Ray Jenkins (Tim) on 9 July 1978. Evidence presented by the state tended to show:

Tim was expected at the home of his parents (Mr. and Mrs. Jenkins) on Sunday, 9 July 1978, to eat lunch with them. He did not appear for that meal. The next day, Mr. Jenkins went to Tim's apartment but did not get an answer at the door. Tim and defendant occupied adjoining apartments. Tim's yellow Volkswagen was parked across the street from the apartment building.

Mr. Jenkins then went to the Gastonia Pepsi Cola Bottling Company plant where his son was employed but did not find him there. Thereafter he returned to the apartment and found the Volkswagen was gone.

On the following day, Tuesday, Mr. Jenkins went to the apartment again but was unable to locate Tim. On the same day, Gaston County Rural Police went to Mr. and Mrs. Jenkins' home to question them. After the police left, they again went to the apartment but failed to find their son.

The parents then decided to go to the rural police station. On their way there, they saw Tim's Volkswagen which was being driven by defendant. They proceeded to talk with defendant and he produced a receipt indicating that he had purchased the car from Tim. At the parents' request, defendant went with them to the rural police station.

At the police station, Mr. and Mrs. Jenkins were told that the police had information suggesting that Tim had been killed. Detective Harrell then talked with defendant who went with him to the detective bureau of the Gastonia Police Department. Defendant was advised of his *Miranda* rights and he signed a form waiving his rights, including the right to have an attorney present while he was being questioned.

Pursuant to questioning by police, defendant made statements to the effect that on the preceding Sunday he and Tim met three white males on a rural road for a "drug deal"; that while there, he (defendant) fell and accidentally discharged a shotgun he had carried with him; that shot from the blast struck Tim in his back; that one of the other persons present thereafter struck Tim with a rock; that another one of the persons fired the gun into Tim's face; and that he (defendant) then ran away from the area but returned later and covered Tim's body.

Following directions given by defendant, the police located Tim's body. After finding it they went to defendant's apartment with his consent and there found his shotgun as well as a large number of .410 shotgun shells.

A pathologist testified that he performed an autopsy on Tim's body; that he found a gunshot wound in the victim's back and another in his face and head; that the latter wound was caused by a gunshot entering the victim's cheek and going into his head, destroying the brain and part of the skull; that both shots were fired from a distance of approximately six feet; and that Tim died from the head injuries.

Two of defendant's friends, Randy Drum and Dan Michaels, testified as to statements he made to them (separately) on Monday and Tuesday. To both of them he stated that Tim had been in his apartment; that he caught Tim in the act of stealing his stereo and t.v. set; that he jumped on Tim and cut and sliced him with a knife; that he then made Tim at gunpoint get into his car; and that he thereafter covered Tim with brushes "and stuff like that". To Michaels, defendant also stated that he forced Tim at gunpoint to sign a piece of paper "signing his car over to him"; that after taking Tim out into the country, he cut on him some more; that Tim begged for his life but that he cut on him some more because "no [s.o.b.] was going to break into his apartment and get away

with it". Michaels reported to police on Tuesday what defendant had told him.

Defendant offered no evidence.

The jury returned a verdict finding defendant guilty of first-degree murder "with malice and with premeditation and deliberation". On the question of punishment, the jury found no aggravating circumstance and recommended that defendant be sentenced to life imprisonment. Judgment imposing a life sentence was entered by the court.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas B. Wood, for the state.*

*Assistant Public Defender Larry B. Langson for defendant-appellant.*

BRITT, Justice.

[1] Defendant argues two assignments of error. By his first one, he contends that the trial court erred in not suppressing his alleged statements to police. This assignment has no merit.

Before any evidence was presented at trial, defendant moved to suppress the statements he allegedly made to police because he did not fully understand the rights he was entitled to assert as a criminal defendant. The court conducted a *voir dire* hearing at which the state and defendant presented evidence. Following the *voir dire*, the court made findings of fact, concluded that defendant was fully and completely advised of his constitutional rights, his right against self-incrimination, and his right to have counsel present during interrogation, and denied defendant's motion to suppress the evidence relative to defendant's statements to police.

Defendant argues that this court in *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976), and other cases has set forth the procedure that the trial courts must follow in passing upon the admissibility of evidence relating to incriminating statements; and that the court did not fully comply with that procedure in this case.

The law pertinent to the question raised here is well summarized by Chief Justice Sharp in *State v. Biggs, supra,* pages 529-531, as follows:

> In this jurisdiction, when a defendant challenges the admissibility of an in-custody confession, the trial judge must conduct a *voir dire* hearing to determine whether the confession was voluntarily made and whether the requirements of the *Miranda* decision have been met. *See State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53 (1969). When the trial judge concludes a *voir dire* hearing, the general rule is that he should make findings of fact to show the bases of his ruling. *See State v. Silver,* 286 N.C. 709, 213 S.E. 2d 247 (1975). However, when there is no conflict in the evidence on *voir dire,* we have held it is not error to admit a confession without making specific findings. Yet, at the same time, we have emphasized that it is always the better practice for the court to find the facts upon which the admissibility of the evidence depends. (Citations.)
>
> When there is no conflict in the testimony the necessary findings are implied from the court's admission of the confession into evidence. However, when the *voir dire* evidence is conflicting and contradictory, it is incumbent upon the trial judge to weigh the credibility of the witnesses, resolve the crucial conflicts, and make appropriate findings of fact. *State v. Smith,* 278 N.C. 36, 178 S.E. 2d 597 (1970). Because of his superior opportunity to observe the demeanor of the. witness and to ferret out the truth, the trial judge is given the responsibility for resolving the factual disputes which govern the admissibility of challenged evidence. For the same reason, the trial judge's findings are conclusive on appeal if they are supported by competent evidence. *State v. Smith, supra.*

\*    \*    \*

Subsequent opinions of this Court make it clear when the State seeks to offer in evidence a defendant's in-custody statements, made in response to police interrogation and in the absence of counsel, the State must affirmatively show not only that the defendant was fully informed of his rights but also that he knowingly and intelligently waived his right to

counsel. *State v. White*, 288 N.C. 44, 215 S.E. 2d 557 (1975); *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972). When the *voir dire* evidence regarding waiver of counsel is in conflict, the trial judge *must* resolve the dispute and make an express finding as to whether the defendant waived his constitutional right to have an attorney present during questioning.

Defendant insists that he raised an issue at the *voir dire* as to whether he knowingly and intelligently waived his right to have an attorney present before he answered questions asked by police; that the evidence on that question was conflicting; and that the court did not resolve the dispute by making an express finding as to whether he waived his constitutional right to have an attorney present during questioning.

While we agree with defendant that the trial court did not make an express finding that defendant knowingly and intelligently waived his right to have an attorney present during questioning, we disagree with his argument that he raised an issue on the question.

Defendant testified at the *voir dire*. He was questioned with respect to each of the *Miranda* rights and stated that each of them was read to him by the police, that he read them, and that he voluntarily signed the waiver. The only right he equivocated about was the one relating to the appointment of counsel prior to questioning and the presence of counsel at the time of questioning. On that point, he stated on direct examination:

" . . . I remember him telling me I had the right to have an attorney present while I was being questioned. I remember him telling me if I couldn't afford a lawyer I had the right to request the Court to appoint one to me at no expense before I answered questions. I remember him reading that question to me. At the time, I told him that I did understand it . . . ."

On cross-examination defendant was questioned again about each of the *Miranda* rights. He restated that each of the rights was read to him and that he understood each of them except the one relating to the appointment of counsel. He equivocated on that point but the record discloses the following:

THE COURT:—"If you cannot afford a lawyer, one will be appointed for you before questioning if you wish"—that's what Mr. Harrell's language was—and "If you desire to answer questions now without a lawyer present, you can still have the right to stop answering at any time." Did you understand that?

A. Well, at the time—yes, sir.

Certainly it would have been much better if the trial court had made an express finding as to whether defendant knowingly and intelligently waived his right to counsel before answering questions by police. Nevertheless, we hold that defendant did not raise the issue. The crucial question was whether defendant understood his rights *at the time he waived them.* He testified that he did.

[2] By his own assignment of error, defendant contends that the trial court erred in denying his motion to nonsuit the charge of murder. This assignment has no merit.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Davis,* 289 N.C. 500, 223 S.E. 2d 296, *death sentence vacated* 429 U.S. 809 (1976); *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971).

In passing upon a motion for nonsuit in a criminal action, the courts are required to consider the evidence and all reasonable inferences arising therefrom in the light most favorable to the state, and contradictions and discrepancies, even in the state's evidence, are for the jury to resolve. 4 Strong's N.C. Index 3d, Criminal Law § 104. When the evidence in the case at hand is considered in conformity with these principles, we hold that it was sufficient to withstand the motion for nonsuit.

Defendant argues that the state substantially relied upon statements he allegedly made to the police and to the witnesses Drum and Michaels; that many of those statements were exculpatory; and that the state was bound by them.

It is true that the evidence reveals that defendant made many conflicting statements including a statement that Tim was shot in his head by one of the three persons defendant and Tim

met "on the drug deal"; that the shot which defendant fired into Tim's back was an accident; that defendant and Tim were friends; and that he had no reason or motive for killing Tim.

Even so, there was evidence presented by the state tending to show that the shot which defendant admitted firing could not have been accidental; and that while defendant told witnesses he cut Tim "to pieces", there were no knife wounds on Tim's body. Defendant told witnesses that he "thought" he killed Tim, and he definitely stated that he covered Tim with grass or bushes. In talking with his friends Drum and Michaels about what he had done to Tim, defendant did not mention any other persons being with the two of them. In determining defendant's guilt, the jury was not required to find that Tim died from knife wounds rather than the gunshot wound to which the pathologist testified.

As to defendant's motive, the evidence tended to show: that defendant was mad at Tim for entering his apartment and taking his t.v. and stereo; that defendant wanted Tim's Volkswagen; and that he took the car away from Tim, forcing him to sign a "receipt" for it. Although proof of motive is not required to establish guilt of first-degree murder, *State v. Hammonds*, 216 N.C. 67, 3 S.E. 2d 439 (1939), the state presented evidence which tended to show defendant's motive in this case.

We conclude that defendant received a fair trial, free from prejudicial error.

No error.

Justice BROCK took no part in the consideration or decision of this case.