STATE OF NORTH CAROLINA v. ERNEST THOMAS "PETE" CORN

No. 46

(Filed 2 June 1981)

1. **Homicide § 4— elements of first degree murder**

In order for the trial court to submit a charge of first degree murder to the jury, there must have been substantial evidence presented from which a jury could determine that the defendant intentionally shot and killed the victim with malice, premeditation and deliberation.

2. **Homicide § 4.3— premeditation defined**

Premeditation is thought beforehand for some length of time, however short, but no particular length of time is required, it being sufficient if the process of premeditation occurred at any point prior to the killing.

3. **Homicide § 4.3— deliberation defined**

An unlawful killing is committed with deliberation if it is done in a "cool state of blood," without legal provocation, and in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose.

4. **Homicide § 4.4— specific intent to kill**

The intent to kill must arise from a fixed determination previously formed after weighing the matter.

**5. Homicide § 18— proof of premeditation and deliberation**

   Since premeditation and deliberation are processes of the mind, they are not susceptible to direct proof and must almost always be proved by circumstantial evidence. Among the circumstances which may be considered as tending to prove premeditation and deliberation are lack of provocation by the deceased, defendant's acts and comments before and after the killing, the use of grossly excessive force or the infliction of lethal blows after the deceased has been felled, and any history of altercations or ill will between the parties.

**6. Homicide § 21.5— first degree murder case — insufficient evidence of premeditation and deliberation**

   There was insufficient evidence of premeditation and deliberation to sustain defendant's conviction of first degree murder where the evidence was uncontroverted that deceased entered defendant's home in a highly intoxicated state, approached the sofa on which defendant was lying, quarreled with defendant, and accused defendant of being a homosexual, and that defendant replied, "You son-of-a-bitch, don't accuse me of that," immediately jumped from the sofa, grabbed a .22 caliber rifle which he normally kept near the sofa, and shot deceased several times in the chest; there was no evidence that defendant acted in accordance with a fixed design or that he had sufficient time to weigh the consequences of his actions; there was no evidence that defendant threatened deceased before the incident or exhibited any conduct which would indicate that he formed any intention to kill him prior to the incident in question; there was no significant history of arguments or ill will between the parties; and although defendant shot deceased several times, there was no evidence that any shots were fired after deceased fell or that defendant dealt any blows to the body once the shooting ended.

DEFENDANT appeals from judgment of *Howell, J.*, entered at the 24 March 1980 Special Criminal Session of Superior Court, TRANSYLVANIA County.

Defendant was tried upon an indictment, proper in form, charging him with first degree murder of Lloyd F. Melton on 20 November 1979. The jury found defendant guilty of first degree murder and recommended that a sentence of life imprisonment be imposed. From the trial court's judgment sentencing him to life imprisonment, defendant appeals as a matter of right pursuant to G.S. 7A-27(a).

The State's evidence tended to show that Lloyd F. Melton arrived at defendant's house between 11:00 and 11:30 on the morning of 20 November 1979. Defendant and Roy Ward were present at the house when Melton arrived. Shortly thereafter Melton and Ward left in Ward's truck and bought a fifth of vodka and some grapefruit juice. They returned to defendant's house and drank

some of the vodka and grapefruit juice. Defendant did not drink any alcoholic beverages during this time. Melton and Ward then left defendant's house and drove around Transylvania County for several hours, continuing to drink alcoholic beverages as they traveled.

At approximately 5:00 that afternoon they returned to defendant's home. Ward testified that defendant opened the window and looked out as they arrived. When Ward and Melton entered the house, defendant was lying on a sofa in the living room with his hands behind his head. Melton went over to the couch, sat beside defendant, and began to argue with him. During the argument defendant jumped up, pulled a .22 caliber rifle from a crack between the sofa cushion and the back of the sofa, and shot Melton eight to ten times across the chest, killing him instantly. Ward left defendant's house immediately after the shooting and contacted law enforcement officers at the Brevard Police Department and at the Transylvania County Sheriff's Department. Several officers testified that upon arriving at defendant's house to investigate the shooting, they found defendant in the yard, repeatedly stating that he "killed the son-of-a-bitch." Melton was found dead on the floor beside the sofa in the living room.

Defendant testified in his own behalf, claiming that he shot Melton in self defense. He stated that when Melton and Ward arrived at his home at about 5:00 p.m. on 20 November 1979, Melton walked over to the couch on which defendant was lying, grabbed defendant, and began slinging him around and attempting to hit him. At some point during the altercation, Melton apparently accused defendant of being a homosexual. Defendant replied by stating "you son-of-a-bitch, don't accuse me of that." Ward, who had entered the house just before Melton, arose from the chair in which he was sitting and moved toward defendant with a clenched fist. Defendant reached under the sofa and grabbed the .22 caliber rifle which he normally kept in that location. He shot at Melton's leg, and when Melton kept moving toward him, he shot him several times in the chest. After the shooting defendant walked across the street to his sister's house and called the Brevard Police Department. He then returned to his home and waited for law enforcement officers to arrive. Several officers testified that defendant was calm and cooperative during their investigation of the incident.

Defendant's evidence further tended to show that he was five feet seven inches tall and weighed approximately 140 pounds. Melton was five feet ten inches tall and weighed from 180 to 200 pounds. The evidence indicated that Melton had a propensity to commit violent acts after drinking alcoholic beverages and that defendant was aware of this tendency. Roy Ward testified that he was six feet two inches tall and weighed 247 pounds. Defendant stated that he knew Ward had been trained in karate during his service in the military.

The trial judge instructed the jury that they could find defendant guilty of first degree murder, guilty of second degree murder, guilty of voluntary manslaughter, or not guilty. During deliberations the jury returned to the courtroom several times for a repetition of the instructions on first and second degree murder and voluntary manslaughter. Defendant was found guilty of first degree murder.

*John R. Hudson, Jr. for defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Douglas A. Johnston for the State.*

COPELAND, Justice.

Defendant presents seven assignments of error for our consideration on appeal. We find merit in defendant's third assignment and remand the case to the trial court for a new trial.

Defendant assigns as error the trial court's denial of his motion to dismiss the first degree murder charge. He maintains that the State presented insufficient evidence of premeditation and deliberation to sustain a conviction of first degree murder.

[1] In order for the trial court to submit a charge of first degree murder to the jury, there must have been substantial evidence presented from which a jury could determine that the defendant intentionally shot and killed the victim with malice, premeditation and deliberation. *State v. Horton,* 299 N.C. 690, 263 S.E. 2d 745 (1980); *State v. Heavener,* 298 N.C. 541, 259 S.E. 2d 227 (1979); *State v. Baggett,* 293 N.C. 307, 237 S.E. 2d 827 (1977). "Substantial evidence" is that amount of relevant evidence that a reasonable mind might accept as sufficient to support a conclusion. *State v. Smith,* 300 N.C. 71, 265 S.E. 2d 164 (1980); *State v. Powell,* 299

N.C. 95, 261 S.E. 2d 114 (1980). In ruling upon defendant's motion to dismiss on the grounds of insufficient evidence, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. Fletcher*, 301 N.C. 709, 272 S.E. 2d 859 (1981); *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980).

[2-4] Premeditation has been defined by this Court as thought beforehand for some length of time, however short. No particular length of time is required; it is sufficient if the process of premeditation occurred at any point prior to the killing. *State v. Myers*, 299 N.C. 671, 263 S.E. 2d 768 (1980); *State v. Reams*, 277 N.C. 391, 178 S.E. 2d 65 (1970); *State v. Robbins*, 275 N.C. 537, 169 S.E. 2d 858 (1969). An unlawful killing is committed with deliberation if it is done in a "cool state of blood," without legal provocation, and in furtherance of a "fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose." *State v. Faust*, 254 N.C. 101, 106-07, 118 S.E. 2d 769, 772 (1961). The intent to kill must arise from "a fixed determination previously formed after weighing the matter." *State v. Exum*, 138 N.C. 599, 618, 50 S.E. 283, 289 (1905). *See also State v. Baggett, supra; State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974).

[5] Since premeditation and deliberation are processes of the mind, they are not susceptible to direct proof and must almost always be proved by circumstantial evidence. Among the circumstances which may be considered as tending to prove premeditation and deliberation are: lack of provocation by the deceased; defendant's acts and comments before and after the killing; the use of grossly excessive force or the infliction of lethal blows after the deceased has been felled; and any history of altercations or ill will between the parties. *State v. Myers, supra; State v. Baggett, supra; State v. Van Landingham*, 283 N.C. 589, 197 S.E. 2d 539 (1973).

[6] After carefully considering the evidence presented in the case *sub judice* in the light most favorable to the State, we find that the State has failed to show by substantial evidence that defendant killed Lloyd F. Melton with premeditation and deliberation. The shooting was a sudden event, apparently brought on by some provocation on the part of the deceased. The evidence is uncontroverted that Melton entered defendant's home in a highly in-

toxicated state, approached the sofa on which defendant was lying, and insulted defendant by a statement which caused defendant to reply "you son-of-a-bitch, don't accuse me of that." Defendant immediately jumped from the sofa, grabbing the .22 caliber rifle which he normally kept near the sofa, and shot Melton several times in the chest. The entire incident lasted only a few moments.

There is no evidence that defendant acted in accordance with a fixed design or that he had sufficient time to weigh the consequences of his actions. Defendant did not threaten Melton before the incident or exhibit any conduct which would indicate that he formed any intention to kill him prior to the incident in question. There was no significant history of arguments or ill will between the parties. Although defendant shot deceased several times, there is no evidence that any shots were fired after he fell or that defendant dealt any blows to the body once the shooting ended.

All the evidence tends to show that defendant shot Melton after a quarrel, in a state of passion, without aforethought or calm consideration. Since the evidence is insufficient to show premeditation and deliberation, we find that the trial court erred in instructing the jury that they could find defendant guilty of first degree murder and defendant is awarded a new trial for a determination of whether or not defendant is guilty of second degree murder, voluntary manslaughter or not guilty.

Defendant's remaining assignments of error are unlikely to recur at retrial, therefore we deem it unnecessary to discuss them at this time.

For the reasons stated above, this case is remanded to the Superior Court, Transylvania County, for a

New trial.