STATE OF NORTH CAROLINA v. GARY WAYNE ZIGLER

No. 7917SC146

(Filed 3 July 1979)

**1. Weapons and Firearms § 3— discharging firearm into occupied building—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for discharging a firearm into an occupied building where it tended to show that a glass door forming the entrance to a police station was shattered by a shotgun blast; at the time of the shooting, a magistrate was standing directly in front

of the door a little to the left and two other persons were present in the station; two spent shotgun shells found in the street in front of the station were fired from a shotgun taken from defendant when he was arrested a short time later; and defendant told officers he intended to kill a cop before the sun came up. G.S. 14-34.1.

**2. Property § 4.2— damaging real property—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for willful and wanton damage to real property where it tended to show that defendant intentionally fired a shotgun through the glass front door of a police station. G.S. 14-127.

**3. Assault and Battery § 14— communicating threats—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for communicating threats in violation of G.S. 14-277.1(a) where it tended to show that defendant made numerous threatening statements to officers who arrested him and to officers present in the police station after his arrest, that such threats would cause a reasonable person to believe they would be carried out, and that the police officers believed that the threats would be carried out.

**4. Arrest and Bail § 6.2— resisting arrest—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for resisting arrest where it tended to show that an officer observed defendant fire a shotgun from a moving vehicle and informed him that he was under arrest; when the officer attempted to place handcuffs on defendant, he lifted the officer up off the ground; and five or six officers finally had to pull defendant's feet out from under him and place him on the ground on his chest in order to handcuff him.

**5. Jury § 6.3— improper question by prosecutor—failure to strike entire panel**

The trial court did not err in failing to strike the entire jury panel after the prosecutor improperly asked four jurors who had read about the case "whether they had an opinion that the defendant was guilty" where the court sustained defendant's objection to the question and none of the jurors were permitted to respond to it. G.S. 15A-1212(6).

**6. Searches and Seizures § 11— probable cause to search vehicle—effect of removal of vehicle to police station**

Where an officer observed defendant fire a shotgun from the window of his moving vehicle, the officer had probable cause to search defendant's vehicle for shotgun shells at the time he arrested defendant, and the fact that the shells were seized some five to seven minutes later after the vehicle had been removed from the middle of the street to a parking lot at the police station did not make the search and seizure unreasonable.

**7. Criminal Law § 57— expert in ballistics—qualification**

The trial court's determination that a witness was an expert in ballistics was supported by evidence tending to show that he was a special agent in the firearms and toolmark section of the SBI; he had been employed for 25 years in the New York City Police Department in ballistics; and he had tested thousands of rifles, semi-automatic pistols and shotguns.

APPEAL by defendant from *Albright, Judge.* Judgment entered 6 October 1978 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals on 21 May 1979.

Defendant was charged with willful and wanton damage to real property, a violation of G.S. § 14-127; communicating threats, a violation of G.S. § 14-277.1; resisting arrest, a violation of G.S. § 14-223; and discharging a firearm into an occupied building, a violation of G.S. § 14-34.1. Upon defendant's plea of not guilty, the State presented evidence tending to show the following:

On 18 May 1978, Magistrate J. B. Lemons of Stoneville was on duty, and was standing in a room in the Madison Police Station. Two other persons, Tom Tesh, a police officer, and David Highfill, a dispatcher for the Madison Police Department, were present in the room with Magistrate Lemons. At approximately 12:50 a.m., the glass door to the office was shattered by three shotgun blasts. Some of the shots went into a bulletin board that was located behind Magistrate Lemons. Mr. Highfill then immediately radioed for help, and Jerry Welch, the Chief of Police, was also notified at his home of the shooting. Chief Welch immediately left his home and commenced cruising the streets of Madison in search of the person who had fired the shots into the police station. Chief Welch noticed a brown or gold colored Chrysler and began following it. When the headlights of Chief Welch's car shined on the vehicle, a shotgun was fired out of the right side of the Chrysler. The vehicle was stopped by Chief Welch, and the defendant was the only person in it. Officer Tesh was also present when the vehicle was stopped, and he observed that the defendant was armed with what appeared to be an automatic twelve gauge shotgun and that there were several shotgun shells in the vehicle. When the defendant was arrested he was cursing, abusive, disorderly, and loud. He made several threatening statements to the arresting officers. The defendant had to be subdued and handcuffed in order to be taken into custody. Two boxes of shotgun shells were found in the defendant's vehicle when it was being moved from the street where the defendant was arrested to a parking lot located behind the police station. Two discharged shotgun shells were retrieved from the street in front of the police station. Robert Sherwin, who was qualified as an expert in ballistics, testified that the two shells had been fired from the shotgun that was taken from the defend-

ant. While in the police station, the defendant, without being questioned made several statements, including the following: "There are two of you dudes that need killing . . . Someone is going to have to do you in, and I decided that it was going to be me . . . The brothers are going to do you in . . . I was going to kill a cop before the sun came up . . . I don't care if I spend fifty years in jail I will get you when I get out."

The defendant presented no evidence.

Defendant was found guilty as charged. From a judgment entered on the verdict sentencing the defendant to nine to ten years in No. 78CR6188 for the offense of discharging a firearm into an occupied building, six months in No. 78CR6184 for the offense of willful and wanton damage to real property to run at the expiration of the sentence imposed in No. 78CR6188, and six months in Nos. 78CR6185 and 78CR6186 to run at the expiration of the sentence imposed in No. 78CR6184, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Herman L. Taylor for defendant appellant.*

HEDRICK, Judge.

We first consider defendant's assignment of error number six, the denial of his motions for a directed verdict made at the close of the State's evidence.

[1]  G.S. § 14-34.1 provides in pertinent part: "Any person who willfully or wantonly discharges a firearm into or attempts to discharge a firearm into any building, structure . . . or enclosure while it is occupied is guilty of a felony . . ." A person is guilty of the felony created by this section if he intentionally, without legal justification or excuse, discharges a firearm into an occupied building when he knows that the building is occupied or when he has reasonable grounds to believe that it might be occupied. *State v. Williams*, 284 N.C. 67, 199 S.E. 2d 409 (1973).

With regard to this offense, the State presented evidence tending to show that the entrance to the police station located in a lower level of the Town Hall is a glass door; that Magistrate Lemons, at the time of the shooting, was standing directly in

front of the door a little to the left; that at the time the glass door was shattered by a shotgun blast, two other persons were also present in the police station; and that two spent shotgun shells found in the street in front of the police station were fired from the shotgun taken from the defendant when he was arrested. This evidence, coupled with the defendant's statements to the officers after his arrest, is ample to make out every element of the offense of discharging a firearm into an occupied building to require its submission to the jury.

[2] G.S. § 14-127 provides in relevant part: "If any person shall wilfully and wantonly damage, injure or destroy any real property whatsoever . . . he shall be guilty of a misdemeanor . . ." There was ample evidence presented tending to show that the defendant wilfully and wantonly fired the shotgun and shattered the glass door of the police station, causing damage to real property. Thus, defendant's motion for nonsuit as to this offense was properly denied.

[3] G.S. § 14-277.1(a) provides:

A person is guilty of a misdemeanor if without lawful authority:

(1) He wilfully threatens to physically injure the person or damage the property of another;

(2) The threat is communicated to the other person, orally, in writing, or by any other means;

(3) The threat is made in a manner and under circumstances which would cause a reasonable person to believe that the threat is likely to be carried out; and

(4) The person threatened believes that the threat will be carried out.

There was ample evidence introduced tending to show that the defendant made numerous threatening statements both to the police officers who effected his arrest and to the officers present in the station house after he had been taken into custody. There was plenary evidence from which the jury could find that such threats from the defendant would cause a reasonable person to believe that the threats would be carried out, and that the police officers believed that the threats would be carried out. Thus,

there was ample evidence presented of every element of the crime of communicating threats and the case was properly submitted to the jury as to this offense.

[4] G.S. § 14-223 provides in pertinent part: "If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a misdemeanor . . ." In the present case, the State presented evidence tending to show that the Chief of Police, Jerry Welch, observed the defendant fire a shotgun out of the window of a moving vehicle; that the defendant's automobile was stopped, and Chief Welch approached the vehicle, took the shotgun from the defendant, and informed him that he was under arrest; that the defendant got out of the car, and Chief Welch frisked him for weapons; that when Chief Welch attempted to put handcuffs on the defendant, the defendant resisted and lifted him up off the ground; that the police finally had to pull the defendant's feet out from under him and lay him on the ground on his chest in order to handcuff him; and that it took five or six officers forty to fifty seconds to subdue the defendant. This is sufficient evidence of every element of the offense of resisting arrest to require its submission to the jury and to support a verdict of guilty. We hold that the trial judge properly denied the defendant's motions for nonsuit as to the four offenses of which the defendant was found guilty, and thus the defendant's sixth assignment of error is overruled.

[5] By assignment of error number one, the defendant contends that the trial court erred in failing to strike the entire jury panel after the prosecutor improperly questioned members of the panel. The record discloses that the prosecutor asked the jurors whether any of them had heard or read about the present case. When four of the jurors raised their hands, the assistant district attorney then asked those who had read about the case "whether they had an opinion that the defendant was guilty." The trial court sustained defendant's objection with regard to the inquiry as to which way an opinion was formed, but denied his motion to strike the entire panel.

Under G.S. § 9-14, the trial judge is charged with the duty of deciding all questions as to the competency of jurors. In North Carolina, inquiry into the fitness of jurors to serve is subject to

the trial judge's close supervision, and the "regulation of the manner and the extent of the inquiry rests largely in the trial judge's discretion." *State v. Boykin*, 291 N.C. 264, 272, 229 S.E. 2d 914, 919 (1976); *State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972). A juror who has formed or expressed an opinion as to the guilt or innocence of a defendant may be challenged for cause. However, "[i]t is improper for a party to elicit whether the opinion formed is favorable or adverse to the defendant." G.S. § 15A-1212(6). Thus, the assistant district attorney's question as to whether the jurors had formed an opinion that the defendant was guilty was clearly improper, and the defendant's timely objection thereto was properly sustained by the trial judge. We do not think, however, that this question prejudiced the defendant in the present case since the record discloses that none of the jurors were permitted to respond to the question. Thus, the trial judge did not err in denying defendant's motion to strike the entire jury panel.

By his second assignment of error, defendant contends that the trial court erred by allowing into evidence testimony of Jerry Welch as corroborating the testimony of David Highfill when the testimony was not corroborative. At trial, David Highfill testified that after the door to the police station had been shattered by the shotgun blast, he radioed "that shots had been fired at the police department." Jerry Welch testified that he was telephoned by David Highfill, and that the "communication I received from Mr. Highfill was that small arms had been fired through the door of the police department." Although David Highfill did not testify on direct as to the contents of his telephone conversation with Chief Welch, we think that the testimony of Chief Welch was corroborative of Highfill's testimony as to the events that had transpired that night at the police station. Accordingly, this assignment of error is overruled.

[6] Defendant next contends that the trial court erred in permitting the State to offer testimony as to the shotgun shells found in the automobile driven by the defendant, and in allowing the shells to be introduced into evidence. At trial, the defendant objected to the introduction of this evidence, and the trial court conducted a *voir dire* hearing out of the presence of the jury to determine its admissibility. At the *voir dire* hearing, Chief Welch testified that the defendant's automobile was stopped in the middle of the

street and the defendant was placed under arrest; that prior to the time the defendant was taken to the station house, Chief Welch conducted a search of the defendant's person incident to the arrest and took some shotgun shells out of his pocket; that Chief Welch returned to the vehicle five to seven minutes later for the purpose of removing it from the middle of the street to a parking lot behind the police station; that when he opened the car door, the interior light came on and he observed two boxes which contained thirty-seven loaded shells; that he later found a spent shell on the front seat of the automobile; and that he did not have a search warrant authorizing a search of the vehicle. John T. Gentry, a police corporal, testified that he remained with the defendant's vehicle while the defendant was being taken to the police station, and that he also observed the boxes of shells when Chief Welch returned to remove the car from the street.

Defendant argues that the evidence should have been excluded because there were no exigent circumstances preventing the officers from getting a search warrant prior to the search. We disagree. When there is probable cause to search defendant's automobile at the place of his arrest, and such a search would have been constitutionally permissible without a search warrant, it does not violate the Fourth Amendment rights of the defendant for police to make a warrantless search of his automobile after it has been taken to the police station so long as there is a reasonable basis for its removal. *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed. 2d 209 (1975); *Chambers v. Maroney*, 299 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970); *State v. Hill*, 278 N.C. 365, 180 S.E. 2d 21 (1971). In the present case, had the police conducted the search of the defendant's vehicle at the time of his arrest, the items seized would have been admissible since "automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." *Chambers v. Maroney*, 399 U.S. at 48, 90 S.Ct. at 1979, 26 L.Ed. 2d at 426. In the present case, Chief Welch testified that after following the defendant's automobile, he observed the defendant fire the shotgun out of the window. Chief Welch thus had probable cause to search the defendant's vehicle for shotgun shells at the time of defendant's arrest. The

fact that the shells were seized some five to seven minutes later, after the vehicle had been taken to the police station, does not make the search unreasonable.

[7] Finally, defendant contends that the trial court erred in "allowing Robert Sherwin to testify as an expert in ballistics when the evidence of his expertise in that field was not sufficient." The rule in North Carolina is that a finding by the Court that a witness is qualified as an expert will not be disturbed on appeal if there is evidence to show that, through study or experience, or both, he has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject as to which he testifies. *State v. Phifer*, 290 N.C. 203, 225 S.E. 2d 786 (1976); *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971); 1 Stansbury's N.C. Evidence § 133 (Brandis rev. 1973). In the present case there was evidence tending to show that the witness was a special agent in the firearms and toolmark section of the State Bureau of Investigation, that he had been employed for twenty-five years in the New York City Police Department in ballistics, and that he had tested thousands of rifles, semi-automatic pistols, and shotguns. We hold there was ample evidence of the witness' experience to support the court's finding that he was an expert. This assignment of error is meritless.

We hold defendant had a fair trial free from prejudicial error.

No error.

Chief Judge MORRIS and Judge WEBB concur.