STATE OF NORTH CAROLINA v. TERRY DION JAMES

No. 63A95

(Filed 9 February 1996)

### 1. Homicide § 573 (NCI4th)— firing into club and parking lot—malice—no instruction on involuntary manslaughter

There was no error in a first-degree murder trial which arose from defendant firing an assault rifle into a club building and parking lot where the court did not instruct the jury on the lesser included offense of involuntary manslaughter. Although defendant contended that the evidence showed that he did not know

that the automobiles were occupied at the time he fired and that he did not intend to shoot into the parking lot, the evidence showed that defendant fired a semiautomatic weapon into the club and its adjoining parking lot; unrefuted testimony showed that he planned to fire a rifle into the club and warned another person not to reenter the club because defendant intended to "shoot it up"; and, after momentarily leaving the area in front of the club, the driver of the automobile in which defendant was riding had to slow down to avoid hitting people exiting the club. The uncontradicted evidence establishes that defendant fired into an area he knew was occupied and all of the evidence clearly shows malice.

**Am Jur 2d, Homicide §§ 530, 531.**

**Lesser-related state offense instructions: modern status. 50 ALR4th 1081.**

**Propriety of lesser-included-offense charge to jury in federal homicide prosecution. 101 ALR Fed. 615.**

2. **Assault and Battery § 82 (NCI4th)— discharging a firearm into occupied property—instructions—knowledge of occupation**

The trial court did not err in a prosecution for discharging a firearm into occupied property by using the pattern jury instruction, which informed the jury that it could find defendant guilty if defendant knew or had reasonable grounds to believe that the automobile might be occupied. The interpretation of *State v. Williams*, 284 N.C. 67, is reaffirmed. N.C.G.S. § 14-34.1.

**Am Jur 2d, Assault and Battery § 53; Weapons and Firearms § 29.**

3. **Assault and Battery § 81 (NCI4th); Homicide § 280 (NCI4th)— firing into parking lot—discharging a firearm into occupied property—felony murder—evidence sufficient**

There was sufficient evidence to find defendant guilty of discharging a firearm into occupied property, conspiracy to discharge a firearm into occupied property, and first-degree murder under a felony murder theory where intent to shoot into vehicles can be inferred from the fact that defendant fired a semiautomatic weapon into an area where he knew automobiles were

parked and the State presented evidence that defendant knew people were exiting the club and present in the parking lot when he fired the rifle, from which the jury could infer that defendant clearly had reasonable grounds to believe that the automobiles might be occupied by one or more persons.

**Am Jur 2d, Assault and Battery §§ 48-53; Homicide § 442; Weapons and Firearms § 29.**

4. **Criminal Law § 810 (NCI4th)— right not to testify— instructions—not testifying as trial tactic**

The trial court did not err in a prosecution for discharging a firearm into occupied property and felony murder by instructing the jury that a defendant does not have to take the stand or present evidence, that the defendant's choice not to do so cannot be used against the defendant, that it is a constitutional right not to be required to take the stand, and that it may also be a trial tactic. While the reference to trial tactics was unnecessary, it was not a comment on defendant's failure to testify, the judge properly informed the jury that defendant's failure to testify was not to be used against him, and, at the conclusion of the trial, the court instructed the jury that defendant's decision not to testify created no presumption against him and that his silence was not to influence the jury's decision.

**Am Jur 2d, Criminal Law §§ 705, 940.**

**Propriety under *Griffin v. California* and prejudicial effect of unrequested instruction that no inferences against accused should be drawn from his failure to testify. 18 ALR3d 1335.**

5. **Criminal Law § 1233 (NCI4th)— Fair Sentencing Act—IQ of 73—not found as mitigating factor**

The trial court did not err when sentencing defendant for discharging a firearm into occupied property and conspiracy to discharge a firearm into occupied property by not finding defendant's IQ of 73 a mitigating factor even though the State stipulated to defendant's limited intelligence and the jury found defendant's IQ to be a mitigating circumstance. To establish that the trial judge erred in failing to find a statutory mitigating factor, the evidence must show conclusively the existence of the statutory mitigating factor and that no other reasonable inference could be drawn from the evidence.

STATE v. JAMES

[342 N.C. 589 (1996)]

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Llewellyn, J., at the 8 August 1994 Criminal Session of Superior Court, Pender County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed on 17 April 1995. Heard in the Supreme Court 11 December 1995.

*Michael F. Easley, Attorney General, by Clarence DelForge III, Assistant Attorney General, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

FRYE, Justice.

Defendant, Terry Dion James, was indicted for first-degree murder, two counts of discharging a firearm into occupied property, and two counts of conspiracy to discharge a firearm into occupied property. Defendant was convicted on all counts, except one count of conspiracy to discharge a firearm into occupied property. Defendant's first-degree murder conviction was based on a theory of felony murder, with discharging a firearm into occupied property being the underlying felony.

Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial judge imposed a sentence of life imprisonment for the first-degree murder conviction. The judge also imposed prison sentences of ten years for one count of discharging a firearm into occupied property and three years for conspiracy to discharge a firearm into occupied property, the sentences to run consecutively. Judgment was arrested on one count of discharging a firearm into occupied property.

The State's evidence at trial tended to show the following facts and circumstances:

During the late night hours of Saturday, 6 March 1993, and the early morning hours of 7 March 1993, Valentine Farland was at the American Legion Post in Pender County. He had a Chinese-made SKS semiautomatic rifle with a thirty-round banana clip in his possession.

Upon leaving the American Legion Post, Farland put the rifle in the trunk of a blue, four-door Hyundai automobile owned by Jerrod Watkins. Farland then left the American Legion Post and went to the Bordeaux Club (the club). Defendant, along with Jerrod Watkins, Zollie Watkins, Tyrone Batts, and Williford Farrier, traveled in Jerrod's automobile to the club.

Defendant and the four other men were sitting outside the club in Jerrod's automobile when Cleveland James walked out of the club. Defendant told Cleveland not to go back in the club because "we're going to shoot the place up." Cleveland disregarded defendant's warning and went back into the club to tell others to leave. The people inside the club immediately began to run outside.

At this point, defendant instructed the driver of the automobile to "[g]o down, then come back, and I'll be shooting the place [from the automobile]." The driver followed these directions. Because of the people in the street, the automobile slowed down as it passed the club. Defendant rolled down the window and began firing the SKS rifle in the direction of the club. He continued shooting as the automobile proceeded down the street that ran along the front of the club and adjoining parking lot.

Hartense James had exited the club upon Cleveland's warning. Hartense was in the driver's seat of his Ford Mustang automobile attempting to start his engine when he was struck by a bullet. The bullet penetrated the door of his automobile and struck him in the side, causing severe damage to his right kidney, abdominal aorta, and liver. Several individuals transported Hartense to the hospital, where he died as a result of the gunshot wound. The State Bureau of Investigation ballistics experts confirmed that the bullet that struck and killed Hartense was fired from the SKS semiautomatic rifle that defendant was shooting.

In addition to striking Hartense's automobile, several bullets struck Yolanda Webb's Pontiac Grand Am automobile, which was parked next to Hartense's automobile. The front windshield of Webb's vehicle was broken on the passenger side. There was a hole above the license plate, damage to the rear window, a broken left tail light, and a dent along the back passenger side quarter panel. Two bullets were taken from inside the vehicle. SBI experts could not ascertain with certainty whether either bullet had been fired from the rifle that defendant was shooting.

After the shooting, Jerrod drove defendant to the home of defendant's sister. Defendant took the rifle with him. The police arrested him there the next morning. An officer found the rifle outside of the house. There were only three rounds left in the thirty-round banana clip.

At trial, defendant presented no evidence and did not testify. His motion to dismiss all the charges against him, made at the close of the State's evidence, was denied.

[1] Defendant makes five arguments on appeal to this Court. As his first argument, defendant contends that the trial court erred by not instructing the jury on the lesser included offense of involuntary manslaughter.

In *State v. Yelverton*, 334 N.C. 532, 434 S.E.2d 183 (1993), we said:

Involuntary manslaughter and second-degree murder are lesser-included offenses supported by an indictment charging murder in the first degree. *E.g., State v. Thomas*, 325 N.C. 583, 591, 386 S.E.2d 555, 559 (1989). A defendant is entitled to a charge on a lesser-included offense when there is some evidence in the record supporting the lesser offense. *Id.* at 593, 386 [S.E.2d] at 561. Conversely, "[w]here the State's evidence is positive as to each element of the offense charged and there is no contradictory evidence relating to any element, no instruction on a lesser included offense is required." *Id.* at 594, 386 S.E.2d at 561; *State v. Peacock*, 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985). "[W]hen the law and evidence justify the use of the felony-murder rule, then the State is not required to prove premeditation and deliberation, and neither is the Court required to submit to the jury second-degree murder or manslaughter unless there is evidence to support it." *State v. Strickland*, 307 N.C. 274, 292, 298 S.E.2d 645, 657 (1983) (quoting *State v. Wall*, 304 N.C. 609, 613, 286 S.E.2d 68, 71 (1982)).

*Yelverton*, 334 N.C. at 544-45, 434 S.E.2d at 190. Thus, the question in this case is whether there was evidence adduced at trial to support a conviction of involuntary manslaughter. We hold there was not.

Involuntary manslaughter is "the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *State v. Redfern*, 291 N.C. 319, 321, 230 S.E.2d 152, 153 (1976), *quoted in State v. Rose*, 335 N.C. 301, 327, 439 S.E.2d 518, 532, *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 883

STATE v. JAMES

[342 N.C. 589 (1996)]

(1994). Culpable negligence is defined as an act or omission evidencing a disregard for human rights and safety. *State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E.2d 905, 918 (1978). Defendant argues that the evidence shows that he did not know that the automobiles were occupied at the time he shot into the parking lot and that he did not intend to shoot into the automobiles but into the club. He further argues that the jury could infer from this evidence that the victim's death was caused by defendant's culpably negligent actions.

However, the evidence is clear that defendant acted with malice and therefore could not have been found guilty of manslaughter, which requires the absence of malice. Defendant fired a semiautomatic weapon into the club and its adjoining parking lot. Unrefuted testimony at trial showed that he planned to fire a rifle into the club and even warned another person not to reenter the club because he intended to "shoot [it] up." Defendant then momentarily left the area in front of the club. When defendant returned to do the shooting, there were people exiting the club. The driver of the automobile had to slow down to keep from hitting these people. From the foregoing evidence, no rational fact finder could find defendant was not aware that the bullets would likely enter automobiles parked in the parking lot and that people might be in some of the automobiles. The uncontradicted evidence establishes that defendant fired the weapon into the club, an area he knew was occupied. We therefore conclude that, because all the evidence clearly shows malice, there was no evidence to support an instruction for involuntary manslaughter. Accordingly, we reject defendant's first argument.

[2] In his second argument, defendant contends the trial court erred by refusing to instruct the jury that, in order for defendant to be found guilty of discharging a firearm into occupied property, it must find that defendant knew the automobile was occupied or had reasonable grounds to believe the automobile was occupied. The court, instead, used the pattern jury instructions which informed the jury that it could find defendant guilty "if the members of the jury found that defendant knew that the automobile was occupied or had reasonable grounds to believe that the automobile *might* be occupied." (Emphasis added.)

We note first that the applicable statute does not contain an express knowledge requirement with reference to the building or vehicle being occupied. Instead, the statute provides that any person who "willfully or wantonly discharges or attempts to discharge . . . [a]

firearm into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure *while it is occupied* is guilty of a . . . felony." N.C.G.S. § 14-34.1 (1993) (emphasis added). Nevertheless, in *State v. Williams*, 284 N.C. 67, 199 S.E.2d 409 (1973), this Court interpreted the statute so as to add a knowledge requirement, as follows:

> We hold that a person is guilty of the felony created by G.S. 14-34.1 if he intentionally, without legal justification or excuse, discharges a firearm into an occupied building with knowledge that the building is then occupied by one or more persons or when he has reasonable grounds to believe that the building might be occupied by one or more persons.

*Id.* at 73, 199 S.E.2d at 412. This interpretation of the statute has been followed in a series of cases decided by this Court and our Court of Appeals. *See, e.g., State v. Wheeler*, 321 N.C. 725, 65 S.E.2d 609 (1988); *State v. Zigler*, 42 N.C. App. 148, 256 S.E.2d 479 (1979); *State v. Furr*, 26 N.C. App. 335, 215 S.E.2d 840 (1975); *State v. Gunn*, 24 N.C. App. 561, 211 S.E.2d 508, *cert. denied*, 286 N.C. 724, 213 S.E.2d 724 (1975); *State v. Williams*, 21 N.C. App. 525, 204 S.E.2d 864 (1974). Although none of these cases emphasize the use of the word "might," we believe our interpretation of the statute in *Williams* was correct, and we now reaffirm that interpretation. The trial judge properly instructed the jury in accordance with this Court's interpretation of the statute. Accordingly, we reject defendant's second argument.

[3] Defendant, in his third argument, contends that the State's evidence was insufficient to persuade a rational fact finder that he intended to shoot into the vehicles. Therefore, defendant argues, the evidence was insufficient to support verdicts of discharging a firearm into occupied property, felony murder, and conspiracy to discharge a firearm into occupied property.

Under N.C.G.S. § 14-34.1 a person who "willfully or wantonly discharges or attempts to discharge . . . [a] firearm into any . . . vehicle . . . while it is occupied is guilty of a . . . felony." N.C.G.S. § 14-34.1. Defendant argues that the State's evidence does not show that he intended to shoot into the vehicles but only illustrates that he intended to shoot into the club. We disagree.

"While intent is a state of mind sometimes difficult to prove, the mind of an alleged offender may be read from his acts, conduct, and inferences fairly deducible from all of the circumstances." *State v.*

*Wilson*, 315 N.C. 157, 163, 337 S.E.2d 470, 474 (1985). Intent to shoot into the vehicles can be inferred from the fact that defendant fired a semiautomatic weapon into an area where he knew automobiles were parked. The jury could reasonably find from the State's evidence that defendant intended to shoot into the vehicles when he shot into the parking lot adjoining the club.

Defendant also argues there is no evidence he shot into the automobiles knowing they were occupied. However, the State presented evidence that defendant knew people were exiting the club and present in the parking lot when he fired the SKS rifle. From this evidence, the jury could find that, although defendant may not have been sure that the vehicles in the parking lot were occupied, he clearly had reasonable grounds to believe that the automobiles might be occupied by one or more persons. That is all the statute requires. We conclude there was sufficient evidence to find defendant guilty of discharging a firearm into occupied property, conspiracy to discharge a firearm into occupied property, and first-degree murder under a felony murder theory.

[4] In his fourth argument, defendant contends the trial judge committed plain error when instructing the jury on defendant's right not to testify. During preliminary jury instructions, the trial judge stated that

> [t]he defendant in a criminal case, upon entering a plea of not guilty, may rest on the weaknesses in the state's case and require the state to carry its burden to the utmost, and that is beyond a reasonable doubt.

> A defendant charged with a criminal offense does not have to take the stand, does not have to present any evidence, and the fact that a defendant may choose to do that can't be used against the defendant. It is a constitutional right that each of us enjoy as citizens of this country not to be required to take the stand in a criminal proceeding and to require the state to carry its burden beyond a reasonable doubt. *It may also be a trial tactic that the defendant not present evidence, for if the defendant makes that decision not to present evidence, not to take the stand, the defendant would get the final argument or closing to the jury.*

(Emphasis added.) According to defendant, these preliminary instructions reduced defendant's constitutional right not to testify to a mere trial tactic.

Article I, Section 23 of the North Carolina Constitution states that a defendant in a criminal prosecution cannot "be compelled to give self-incriminating evidence." N.C. Const. art. I, § 23. Similarly, North Carolina General Statutes section 8-54 provides that no person charged with the commission of a crime shall be compelled to testify or "answer any question tending to criminate himself." N.C.G.S. § 8-54 (1986). We have interpreted this statute as prohibiting the prosecution, the defense, or the trial judge from commenting upon the defendant's failure to testify. *See, e.g., State v. Randolph*, 312 N.C. 198, 205-06, 321 S.E.2d 864, 869 (1984). "[T]he purpose behind the rule prohibiting comment on the failure to testify is that extended reference by the court or counsel concerning this would nullify the policy that the failure to testify should not create a presumption against the defendant." *Id.* at 206, 321 S.E.2d at 869.

We conclude that while the court's reference to trial tactics was unnecessary, it was not a comment on defendant's failure to testify. The judge properly informed the jury that the defendant's failure to testify was not to be used against him. His additional explanation regarding the tactical advantage of a defendant not presenting evidence neither negated that instruction nor created an inference that defendant's failure to testify was an indication of his guilt. In addition, we note, as admitted by defendant in his brief, that the trial court, at the conclusion of the trial, instructed the jury that defendant's decision not to testify created no presumption against him and that his silence was not to influence the jury's decision.

**[5]** In his fifth argument, defendant contends the trial court erred in not finding defendant's IQ of seventy-three a mitigating factor when it increased the presumptive sentences for defendant's convictions for conspiracy to discharge a firearm into occupied property and discharging a firearm into occupied property. Defendant argues that, since the State stipulated to defendant's limited intelligence and the jury found defendant's IQ to be a mitigating circumstance, the trial judge's failure to also use defendant's limited intelligence as a mitigating factor is error.

To establish that the trial judge erred in failing to find a statutory mitigating factor, the evidence must show conclusively the existence of the statutory mitigating factor and that no other reasonable inference could be drawn from the evidence. *State v. Canty*, 321 N.C. 520, 364 S.E.2d 410 (1988). The trial judge could have found that defend-

ant's IQ did not reduce his culpability for these noncapital offenses. Defendant fired a semiautomatic rifle into a populated nightclub and its adjoining parking lot. Defendant knew it was dangerous because he warned Cleveland not to reenter the club because he was going to "shoot . . . up" the club. There was no evidence that defendant's IQ affected his ability to perceive the probable consequences of his actions. The evidence does not show conclusively that defendant's IQ reduced his culpability and that no other reasonable inference could be drawn from the evidence. Accordingly, defendant's fifth argument is rejected.

For the foregoing reasons, we conclude that defendant received a fair trial, free of prejudicial error.

NO ERROR.