An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-380

Filed 7 January 2026

Bertie County, Nos. 20CR050019-070, 20CR050020-070

STATE OF NORTH CAROLINA

   v.

RAQUON DASHON HAYES

Appeal by defendant from judgment entered 10 April 2024 by Judge William D. Wolfe in Bertie County Superior Court. Heard in the Court of Appeals 28 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Hillary F. Patterson, for the State.*

> *William D. Spence for defendant-appellant.*

ZACHARY, Judge.

Defendant Raquon Dashon Hayes appeals from the trial court's judgment entered upon a jury's verdicts finding him guilty of attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and discharging a weapon into occupied property. On appeal, Defendant argues that the trial court erred by denying his motion to dismiss two of the charges and committed

plain error by failing to instruct the jury regarding a lesser-included offense of attempted first-degree murder. After careful review, we conclude that Defendant received a fair trial, free from prejudicial or plain error.

## I. Background

Defendant's case came on for jury trial on 8 April 2024 in Bertie County Superior Court.

At trial, the State presented evidence tending to show the following: Jarell Sessoms testified that he and Defendant had known each other for many years and "were best friends, more like brothers." On 6 January 2020, Sessoms, Defendant, and several other people were "hanging out down on Meadow Road." During this time, Sessoms and Defendant "had words" and Sessoms punched Defendant in the face, busting his lip and knocking him to the ground. Sessoms then left.

The next day, Sessoms and Shekinah Carter drove to the Meadow Road house. Sessoms got out to walk to the house while Carter remained in the car. As Sessoms was returning to his vehicle, Defendant's brother drove up with Defendant riding in the front passenger seat. Sessoms heard Defendant "yell[ing] something" out of his car window, saw that Defendant was holding a shotgun, and then saw that Defendant was shooting at him. Sessoms "tried to duck, but . . . felt something hit" him and he "hit the ground." Sessoms watched Defendant "hanging out [of the car window,] shooting," then he saw the car drive away.

Sessoms realized that he had been shot "several times," from the top of his head "down to the beginning part of [his] chest," and that he was bleeding. Sessoms and Carter went to his mother's house and from there to the hospital, where he was airlifted to another hospital for treatment.

Carter testified that she was in Sessoms's car when Defendant arrived at the Meadow Road house and began shooting and that the shooting occurred as Sessoms had described. Carter also testified that some of the pellets from the shooting hit Sessoms's car while she was inside of it. Additionally, Sessoms's mother testified that Sessoms was "really bloody" in his "face, head, neck, [and] chest area" and that Sessoms told her that Defendant had "just shot" him.

At the close of the State's evidence, defense counsel made a motion to dismiss all charges. The trial court denied the motion.

On 10 April 2024, the jury returned its verdicts finding Defendant guilty of attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and discharging a weapon into occupied property. That same day, the trial court entered judgment, consolidating Defendant's convictions and sentencing him to a term of 108 to 142 months' imprisonment in the custody of the North Carolina Department of Adult Correction.

Defendant gave oral notice of appeal.

**II. Appellate Jurisdiction**

As a preliminary matter, we consider our jurisdiction. A review of the transcript and record reveals that Defendant gave oral notice of appeal in open court immediately following the trial court's entry of judgment against him; the court noted Defendant's notice of appeal and stated: "Further notice is unnecessary."

On 17 May 2024, Defendant filed a pro se notice of appeal from the judgment, claiming ineffective assistance of counsel at trial. On 27 June 2024, the trial court entered an order denying post-conviction relief and dismissing Defendant's appeal. On 13 May 2025, Defendant filed a petition for writ of certiorari, arguing that he gave proper oral notice of appeal in open court and that "the trial court's jurisdiction over this case expired" prior to the entry of its order denying post-conviction relief and dismissing his appeal; consequently, the court "had no authority to dismiss this appeal." On 14 August 2025, the State filed its response, conceding that "[i]t appears that [Defendant] entered proper oral notice of appeal."

A "party entitled by law to appeal from a judgment" may "take appeal by . . . giving oral notice of appeal at trial." N.C.R. App. P. 4(a). "Because Defendant gave oral notice of appeal in open court immediately upon entry of the final judgment, Defendant properly gave notice of appeal at trial, as required by Rule 4." *State v. Graham*, 287 N.C. App. 477, 481, 882 S.E.2d 719, 723 (2023) (cleaned up and emphasis omitted).

We conclude that Defendant gave proper oral notice of appeal and dismiss Defendant's petition for writ of certiorari as moot.

## III. Discussion

Defendant argues that the trial court erred by denying his motion to dismiss the charges of attempted first-degree murder and discharging a weapon into an occupied vehicle because the State's "evidence was insufficient" on both charges.[1] He also argues that, alternatively, the court committed plain error by failing to instruct the jury on attempted voluntary manslaughter, a lesser-included offense of attempted first-degree murder.

## A. Motion to Dismiss

Defendant argues that the trial court erred by denying his motion to dismiss because the State presented insufficient evidence to support two of the charges.

"A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of [the] defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a

---

[1] While Defendant properly moved to dismiss the charges at the close of the State's evidence, a review of the transcript reveals that he did not renew his motion at the close of all evidence. Our appellate rules provide that if a defendant makes a motion to dismiss "after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, [the] defendant's motion for dismissal . . . made at the close of [the] State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal." N.C.R. App. P. 10(a)(3). Here, however, Defendant did not present any evidence. "[W]hen a defendant puts on no evidence, the motion to dismiss must be made at the close of the State's evidence." Elizabeth Brooks Scherer & Matthew Nis Leerberg, *North Carolina Appellate Practice and Procedure* § 4.03[7][a][ii] (2022); *see also State v. Juran*, 294 N.C. App. 81, 84, 901 S.E.2d 872, 876 (2024). Accordingly, while Defendant did not make a motion to dismiss at the close of all evidence, he preserved this issue for appeal by making a motion to dismiss at the close of the State's evidence.

conclusion." *State v. Teague*, 216 N.C. App. 100, 105, 715 S.E.2d 919, 923 (2011) (citation omitted), *disc. review denied and appeal dismissed*, 365 N.C. 547, 720 S.E.2d 684 (2012).

"In ruling upon a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences which may be drawn from the evidence." *State v. Legrand*, 289 N.C. App. 572, 576, 891 S.E.2d 1, 3–4 (2023) (citation omitted). "[I]f the record developed at trial contains substantial evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Blagg*, 377 N.C. 482, 488, 858 S.E.2d 268, 273 (2021) (citation omitted). "When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *Teague*, 216 N.C. App. at 105, 715 S.E.2d at 923 (citation omitted).

"Once the court decides that a reasonable inference of [the] defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty." *Blagg*, 377 N.C. at 489, 858 S.E.2d at 273 (citation omitted). "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *State v. Coley*, 257 N.C. App. 780, 786, 810 S.E.2d 359, 363 (2018) (citation omitted). Indeed, "[i]n borderline or close cases, our courts have consistently

expressed a preference for submitting issues to the jury." *Blagg*, 377 N.C. at 489, 858 S.E.2d at 273 (citation omitted).

### 1. *Standard of Review*

"This Court reviews de novo whether a trial court erred in denying a motion to dismiss for insufficient evidence on each element of a criminal offense." *Legrand*, 289 N.C. App. at 576, 891 S.E.2d at 3 (italics omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Foreman*, 270 N.C. App. 784, 788, 842 S.E.2d 184, 187 (2020) (citation and italics omitted).

### 2. *Discharging a Weapon into an Occupied Vehicle*

Defendant argues that the trial court erred in denying his motion to dismiss the charge of discharging a weapon into an occupied vehicle because "the evidence was insufficient to show that [D]efendant knew or had reasonable grounds to believe that the car was actually occupied at the time of the shooting."

"Any person who willfully or wantonly discharges or attempts to discharge any firearm or barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second into any . . . vehicle . . . while it is occupied is guilty of a Class E felony." N.C. Gen. Stat. § 14-34.1(a) (2023). This statute has been interpreted to include "a knowledge requirement":

> [A] person is guilty of the felony created by [N.C. Gen. Stat. §] 14-34.1 if he intentionally, without legal justification or excuse, discharges a firearm into an

occupied building *with knowledge* that the building is
then occupied by one or more persons or when he has
*reasonable grounds to believe* that the building might be
occupied by one or more persons.

*State v. James*, 342 N.C. 589, 596, 466 S.E.2d 710, 715 (1996) (emphases added)
(citation omitted).

"While intent may be shown by direct evidence, it is often proven by
circumstantial evidence from which it may be inferred." *State v. Wilson*, 269 N.C.
App. 648, 652, 839 S.E.2d 438, 441 (citation omitted), *disc. review denied*, 376 N.C.
532, 851 S.E.2d 629 (2020), *cert. denied*, 595 U.S. 19, 211 L. Ed. 2d 51 (2021); *James*,
342 N.C. at 597, 466 S.E.2d at 715 ("Intent to shoot into the vehicles can be inferred
from the fact that [the] defendant fired a semiautomatic weapon into an area where
he knew automobiles were parked.").

Here, Defendant contends that "[t]here was no evidence presented by the State
that would show that [he] was aware or could see that anyone was in the car when
he shot" or that the vehicle was "actually hit." We disagree.

In *James*, the defendant, while sitting in a car, shot into vehicles in a parking
lot of a club. 342 N.C. at 593, 466 S.E.2d at 713. On appeal, the defendant contended
that there was "no evidence he shot into the automobiles knowing they were
occupied." *Id.* at 597, 466 S.E.2d at 715. Our Supreme Court rejected this argument,
noting that "the State presented evidence that [the] defendant knew people were
exiting the club and present in the parking lot when he fired." *Id.* The Court

determined that "[f]rom this evidence, the jury could find that, although [the] defendant may not have been sure that the vehicles in the parking lot were occupied, he clearly had reasonable grounds to believe that the automobiles might be occupied by one or more persons. That is all the statute requires." *Id.*

Similarly, in the instant case, the State presented evidence that Defendant knew that Sessoms was near his car when Defendant began shooting at him. Moreover, Carter testified that while she was in the car, her head was "[a]bove the window line" and that she could see Defendant holding the gun—in direct contradiction to Defendant's claim that "[t]he evidence would indicate she was down in the seat, out of sight." We conclude that while Defendant "may not have been sure that" Sessoms's car was occupied as he was shooting, "he clearly had reasonable grounds to believe that the automobile[ ] might be occupied by one or more persons." *Id.* Accordingly, Defendant's contention in this regard is overruled.

Defendant also argues that Carter's "speculative testimony" as to how she knew that the car had been shot—"[b]ecause [she] could hear it. You could kind of feel it a little bit"—was "insufficient to show that an actual pellet actually hit" the vehicle and therefore, the trial court erred in failing to dismiss this charge.

In *State v. Galloway*, this Court determined that "a reasonable jury could conclude that [the d]efendant fired into [the victim]'s vehicle" even where "no bullet holes were found anywhere in the vehicle and . . . no bullet casings or bullets were found in nearby trees or on the road." 226 N.C. App. 100, 107, 738 S.E.2d 412, 416

(2013) (cleaned up). We concluded that the victim's testimony that he saw the defendant shooting a gun at him, together with the presence of a recovered round that had been fired from the firearm—and was discovered near the defendant—was sufficient evidence to deny the defendant's motion to dismiss. *Id.* Importantly, the question of "whether the bullet fired actually passed through the cabin of [the victim]'s vehicle was a question for the jury." *Id.*; *see also State v. Watson*, 66 N.C. App. 306, 308–09, 311 S.E.2d 381, 382 (1984) (concluding that the offense of discharging a weapon into an occupied dwelling was properly submitted to the jury where the sole evidence was testimony that occupants of a house "heard a bullet hit a window, heard window glass break, and heard bullets hit the side of the house").

In the present case, viewing the evidence in the light most favorable to the State and bearing in mind that "our courts have consistently expressed a preference for submitting issues to the jury," we conclude that there was substantial evidence for the jury to determine that Defendant discharged his weapon into an occupied vehicle. *Blagg*, 377 N.C. at 489, 858 S.E.2d at 273 (citation omitted). The trial court properly denied Defendant's motion to dismiss this charge.

### 3. *Attempted First-Degree Murder*

Defendant also asserts that the trial court erred in denying his motion to dismiss the charge of attempted first-degree murder because the State did not present sufficient evidence of "the required elements of premeditation and deliberation." We disagree.

- 10 -

"The essential elements of attempted first-degree murder are (1) a specific intent to kill another person unlawfully; (2) an overt act calculated to carry out that intent, going beyond mere preparation; (3) the existence of malice, premeditation and deliberation accompanying the act; and (4) a failure to complete the intended killing." *Foreman*, 270 N.C. App. at 789, 842 S.E.2d at 188 (cleaned up).

"Specific intent to kill is an essential element of first[-]degree murder, but it is also a necessary constituent of the elements of premeditation and deliberation. Thus, proof of premeditation and deliberation is also proof of intent to kill." *Teague*, 216 N.C. App. at 106, 715 S.E.2d at 924 (cleaned up).

"A person acts with premeditation when the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Rush*, 196 N.C. App. 307, 312, 674 S.E.2d 764, 769 (cleaned up), *disc. review denied*, 363 N.C. 587, 683 S.E.2d 706 (2009). "Deliberation is defined as an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose." *Id.* (cleaned up). When determining the presence of premeditation and deliberation, this Court considers several factors: "(1) lack of provocation by the intended victim or victims; (2) conduct and statements of the defendant both before and after the attempted killing; (3) threats made against the victim or victims by the defendant; and (4) ill will or previous difficulty between the defendant and the intended victim or victims." *Id.* (citation omitted).

In the case at bar, Defendant asserts that Sessoms's "unexpected assault" caused him to act "in a state of passion where his emotions overc[a]me his reason, calm consideration, and good (or any) judgment," and in support of his argument cites *State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981).Yet, Defendant's reliance on *Corn* is misplaced.

In *Corn*, the victim entered the defendant's home and insulted the defendant, who "immediately jumped" up and shot the victim several times in the chest. *Id.* at 297–98, 278 S.E.2d at 223–24. "The entire incident lasted only a few moments," leading to the conclusion that there was "no evidence that [the] defendant acted in accordance with a fixed design or that he had sufficient time to weigh the consequences of his actions." *Id.* at 298, 278 S.E.2d at 224.

Here, "evidence of [Defendant's] premeditation and deliberation" may be inferred from: (1) the "lack of provocation" by Sessoms, who was simply walking to his car; (2) Defendant's conduct during the incident, where he "yelled something" at Sessoms, shot him as he aimed out of the car window, and drove away after shooting Sessoms without checking on his well-being; (3) the "ill will or previous difficulty between" Defendant and Sessoms, as evinced by their prior physical altercation; and (4) the fact that the shooting took place the day after their physical altercation. *Rush*, 196 N.C. App. at 312, 674 S.E.2d at 769 (citation omitted); *see also State v. Peoples*, 141 N.C. App. 115, 118, 539 S.E.2d 25, 28 (2000) (determining that the State presented sufficient evidence that the defendant acted with premeditation and

deliberation where, *inter alia*, the defendant and the victim had been involved in an altercation "only an hour or two earlier in which [the victim] hit [the] defendant in the face," the defendant later pulled up next to the victim and pointed his gun at him, and the defendant fired at the victim multiple times "from only a few feet away").

Thus, the State presented sufficient evidence of premeditation and deliberation and that Defendant was not acting "in a state of passion, without aforethought or calm consideration." *Corn*, 303 N.C. at 298, 278 S.E.2d at 224. The trial court properly denied Defendant's motion to dismiss the charge of attempted first-degree murder of Sessoms.

### B. Jury Instructions

In the alternative, Defendant asserts that the trial court committed plain error by "failing to instruct the jury on the lesser[-]included offense of attempted voluntary manslaughter."

### *1. Standard of Review*

In criminal cases, certain evidentiary and instructional issues that were not properly preserved by objection at trial and that are not otherwise "deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4).

Defendant concedes that "[i]n the trial below, [he] did not object to the trial court's instructions and did not request a lesser[-]included charge of attempted first[-

]degree murder." However, he now "specifically and distinctly contend[s]" that the court's failure to instruct the jury on attempted voluntary manslaughter amounted to plain error and seeks plain-error review. *Id.*

To show plain error, a defendant must meet a three-part test. First, the defendant "must demonstrate that a fundamental error occurred at trial." *State v. Brown*, 221 N.C. App. 383, 389, 732 S.E.2d 584, 589 (2012) (citation omitted). Second, "[t]o show that an error was fundamental, [the] defendant must establish prejudice— that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (citation omitted). Third, "the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (cleaned up).

"Even when the plain error rule is applied, it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *State v. Bell*, 359 N.C. 1, 23, 603 S.E.2d 93, 109 (2004) (cleaned up), *cert. denied*, 544 U.S. 1052, 161 L. Ed. 2d 1094 (2005).

### 2. *Analysis*

Defendant contends that he "was still, at the time of the shooting[,] in the heat of passion and incapable of cool reflection" and therefore, "[t]he trial court's failure to instruct the jury on attempted voluntary manslaughter was prejudicial plain error

. . . which tilted the scales against" him. (Quotation marks omitted). We disagree.

"A jury must be instructed on a lesser[-]included offense only when evidence has been introduced from which the jury could properly find that the defendant had committed the lesser[-]included offense." *State v. Gardner*, 289 N.C. App. 552, 558, 891 S.E.2d 7, 12 (2023) (citation omitted). "When determining whether the evidence supports a jury instruction on a lesser-included charge, the trial court must consider the evidence in the light most favorable to the defendant." *Id.* "Where the State's evidence is positive as to each element of the offense charged and there is no contradictory evidence relating to any element, no instruction on the lesser[-]included offense is required." *Id.* at 560, 891 S.E.2d at 13 (citation omitted).

"Attempted voluntary manslaughter is a lesser-included offense of attempted first-degree murder." *State v. Guin*, 282 N.C. App. 160, 167, 870 S.E.2d 285, 291, *disc. review denied*, 382 N.C. 326, 876 S.E.2d 281 (2022).

"[T]o support an instruction on attempted voluntary manslaughter, a defendant must produce 'heat of passion' or 'provocation' evidence negating the elements of malice, premeditation, or deliberation." *State v. Rainey*, 154 N.C. App. 282, 290, 574 S.E.2d 25, 30, *disc. review denied*, 356 N.C. 621, 575 S.E.2d 520 (2002). And "[t]o receive an instruction based on a theory of heat of passion, there must be evidence that: (1) [the] defendant committed the act in the heat of passion; (2) [the] defendant's passion was sufficiently provoked; and (3) [the] defendant did not have

sufficient time for his passion to cool off." *Gardner*, 289 N.C. App. at 559, 891 S.E.2d at 12 (cleaned up). "Mere speculation as to the elements is not sufficient." *Id.*

Here, our review of the record reveals no evidence that Defendant acted "in the heat of passion." *Id.* (citation omitted). Rather, the facts surrounding Defendant's shooting of Sessoms support the conclusion that this was a calculated act; having a driver allowed Defendant to freely shoot at Sessoms and to yell to Sessoms before shooting him, evincing recognition and mitigating an inference that the attack could have been meant for someone else. Moreover, Sessoms testified at trial that he "really didn't think [Defendant] was going to shoot [him]" but instead "thought [Defendant] was trying to scare [him]"—indicating that Defendant's manner was calm and calculated. The record is devoid of evidence that Defendant's passion was sufficiently provoked at the time of the shooting; rather, the evidence indicates that the altercation the night before the shooting inspired Defendant to seek revenge. It is clear that Defendant did indeed "have sufficient time for his passion to cool off." *Id.* (citation omitted).

"As there was no evidence tending to show a killing was committed in the heat of passion suddenly aroused by adequate provocation, the trial court did not err by refusing to give the instruction on the lesser-included offense of [attempted] voluntary manslaughter." *Id.* at 559–60, 891 S.E.2d at 12–13 (cleaned up). There being no error, there is no plain error.

## IV. Conclusion

For the foregoing reasons, Defendant received a fair trial, free from prejudicial or plain error.

NO ERROR.

Judges STROUD and CARPENTER concur.

Report per Rule 30(e).